Argued March 14, affirmed September 6, 1974

AMATO, *Respondent, v.* AMATO'S SUPPER CLUB, INC., *Appellant.*

AMATO'S SUPPER CLUB, INC., *Appellant, v.* AMATO ET AL, *Respondents,* BAKER ET AL, *Appellants.*

525 P2d 1023

*Peter A. Schwabe, Jr.,* Portland, argued the cause for appellants. With him on the briefs were Howard P. Arnest, and Schwabe & Schwabe, Portland.

*Edward J. Murphy, Jr.,* Portland, argued the cause for respondents. With him on the brief were Wheelock, Niehaus, Baines & Murphy, Portland.

HOLMAN, J.

Two cases arising out of the same transaction were consolidated for trial. The first was an action by George Amato against Amato's Supper Club, Inc., on a note of approximately $6,000. Subsequently, the corporate defendant filed an action against George Amato and Sally Baker, a stockholder of the corporation and its former manager, claiming conversion of assets arising from the unauthorized payment of approximately $53,000 of corporate assets by Sally Baker to George Amato. By stipulation the two remaining stockholders of the corporation in addition to Sally Baker, Rolph Baker and Robert Nordling, were added as parties to the second case. The corporation, Rolph Baker, and Nordling appeal from a result favorable to Amato in both cases.

On or about November 1, 1968, George Amato and his wife sold to Sally Baker, Rolph Baker and Robert Nordling all of the stock in Amato's Supper Club, Inc. The principal assets were a bowling alley and a bar and restaurant in conjunction therewith. At the time of the sale, there were outstanding notes of the corporation to George Amato in the sum of approximately $58,000 which the corporation had given

to Amato when he advanced funds to it. The notes were not paid prior to the sale of the corporate stock; however, the agreement between the Amatos and the purchasers contained a warranty that the corporation had no outstanding obligations. Sally Baker, one of the purchasers, had been a long-time employee of Amato and became the manager of the corporation after the sale. Between January 1969 and August 1970 she, as manager, paid Amato approximately $53,000 of corporate funds on the previously mentioned notes of the corporation to Amato.

When Amato brought an action against the corporation on the remaining note of approximately $6,000, the corporation reacted with its action against Amato and Sally Baker to recover the $53,000 already paid to Amato, claiming the purchasers had taken the assets of the corporation free of all obligations. The other purchasers were made parties to the case and Amato then answered, seeking equitable relief by way of reformation of the agreement for the sale of the stock because of mutual mistake. He claimed his and his wife's warranty that the corporation had no obligations should have excepted the notes which the corporation owed him. The principal issue was whether Amato was entitled to reformation. The trial court ruled he was, and he was therefore successful in both cases, whereupon these appeals resulted.

Amato claimed, and his evidence tended to show, that the original intention of the parties was that prior to the sale the corporation would pay the notes owed to him out of cash which the corporation had on hand and, therefore, the agreement provided that there should be no exception from the warranty that the corporation had no outstanding obligations. He con-

tended that a day or so before the papers were to be signed, the purchasers decided that payment of the notes might run the corporation short of operating capital and it was agreed that payment of the notes would be delayed until after the sale in order to give the corporation more time to build up its operating capital. However, changing the provision that there were no debts outstanding was overlooked.

Rolph Baker and Nordling claimed that at no time did they know anything of debts owed by the corporation to Amato and that they did not discover until 1971 that Sally Baker had paid the $53,000 to Amato. They claim that the corporate stock was sold to them on the basis that it was a good deal because of all the cash the corporation had on hand.

It is our opinion that the trial judge was correct and that the parties intended to except the notes from the warranty given by the Amatos. Amato, his lawyer, his accountant, the real estate broker, and Sally Baker testified for Amato.[1] In addition, in June of 1968 the purchasers signed an earnest money proposal, not accepted by Amato, which had an attached addendum containing the following provision:

> "Reference is made to that certain Earnest Money Receipt, Agreement to Buy and Agreement to Sell, dated June    1968, wherein SALLY BAKER, J. ROLPH BAKER and ROBERT NORDLING offer to buy 'All of the authorized stock of Amato's Supper Club, Inc., an Oregon Corporation, free and clear of encumbrances, including the trade-name, goodwill, saleable inventory and all of the fixtures and equipment used in the operation of the business, *but excepting the cash on hand and in the bank,* of the business known as * * *." (Emphasis ours.)

---

[1] The real estate broker was Sheldon Baker, the brother of Rolph Baker and the husband of Sally Baker.

524

This bolsters Amato's contention that the cash on hand was intended to be used to pay the notes. Also, the minutes of the first meeting of the new Board of Directors composed of the purchasers, which was held at the time of signing the papers consummating the sale, contained the following provision:

> "SALLY BAKER pointed out to the Directors that the corporation is indebted to GEORGE AMATO in the amount of $58,053.76, all evidenced by a series of notes given by the corporation and which said notes have varying maturity dates, and that it might be advantageous to the corporation to consider payments of a portion of the indebtedness and to arrange with MR. AMATO for the liquidation of the balance thereof upon terms which could be met by the corporation and without impairment of anticipated cash flow. That she felt that perhaps the corporation could within the next ninety (90) days pay approximately $40,000.00 on account of the said indebtedness, plus the accruals of interest, and that if MR. AMATO would be agreeable, that the balance of such indebtedness could be paid in monthly installments of $1,000.00 each beginning with October, 1969, through May, 1970, and the balance thereafter beginning October, 1970, and in $1,000.00 installments, payable monthly, until the balance of the indebtedness be paid in full. Whereupon, it was moved, seconded and unanimously:

>> "RESOLVED: That SALLY BAKER be authorized and directed to negotiate with GEORGE AMATO for the payment of the corporation's debt to him in the sum of $58,053.76, and interest, upon terms as herein outlined."

The quantum of proof required to sustain reformation was stated in *Mignot v. Parkhill*, 247 Or 465, 467, 430 P2d 1007 (1967) to be as follows:

> "To obtain reformation the evidence of mutual mistake must be clear, convincing and unambiguous * * *."

It is our belief that not only did the oral evidence predominate in Amato's favor, but the above two documents make it impossible for Rolph Baker and Nordling to contend successfully that they knew nothing of any indebtedness of the corporation to Amato. The quantum of proof which the law requires was met.

The decision of the trial court is affirmed.