Argued September 10, affirmed in part; reversed in part;
remanded November 28, 1975

KOENNECKE, *Appellant, v.* WAXWING CEDAR
PRODUCTS, LTD. ET AL, *Respondents.*

543 P2d 669

*Darrell E. Bewley,* Portland, argued the cause for appellant. With him on the brief were Francis F. Yunker and James C. Niedermeyer, Portland.

*Lee A. Hansen,* Portland, argued the cause and filed a brief for respondent Yunker.

Theodore S. Bloom, Portland, filed a brief for respondents Waxwing Cedar Products, Ltd., and William J. Browne. With him on the brief were Thomas J. Barnett and Ray Mize, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

BRYSON, J.

Plaintiff-lessor brought this action to recover damages for the destruction of real property improvements and equipment resulting from a fire caused by the alleged negligence of defendant-lessee, Wax-

wing Cedar Products, Ltd., and William J. Browne and Roy Yunker, whom plaintiff contends were "part of a joint venture" with Waxwing. Defendant Waxwing filed an affirmative defense praying for reformation of its lease with plaintiff covering the real property and equipment. ORS 16.460(2).

The case went to trial on the equity side of the court on the issue of reformation. The trial court found from the evidence that plaintiff and Waxwing, by mutual mistake, had erred in memorializing the terms of their lease and entered a decree reforming the lease as prayed for. The trial court also found that the lease, as reformed, constituted a complete defense in favor of all defendants as to plaintiff's first cause of action and entered judgment thereon of involuntary nonsuit against plaintiff.

Plaintiff's second cause of action sought damages for destruction of equipment he left stored on the leased premises. Because plaintiff stipulated that he would be unable to prove that defendants, as gratuitous bailees, were grossly negligent in the care of his property, the trial court also granted defendants' motions for involuntary nonsuit as to plaintiff's second cause of action.

William J. Browne is the president of Waxwing. Roy Yunker is a major creditor of Waxwing and had underwritten its line of credit at the bank.

In September of 1970 Browne met plaintiff at North Plains, Oregon, and commenced negotiations for the lease of plaintiff's sawmill. After preliminary discussions, it was agreed that plaintiff would lease his sawmill and a large portion of the equipment to Waxwing for the agreed sum of $6,000 per month. Shortly thereafter the parties met at the law office of Browne's attorney, where the terms of the lease

were discussed in further detail. Yunker was present on some of these occasions. Thereafter, Browne's attorney prepared the formal lease agreement which was executed by plaintiff and Waxwing on October 13, 1970.

Approximately 10 months later a fire at the sawmill destroyed the leased premises, including the buildings and equipment therein. Plaintiff contends that the fire was caused by defendants' negligence and that he is entitled to recover for the loss of his sawmill building and equipment. The principal defense is that plaintiff agreed to insure the leased premises for the benefit of all parties in consideration of the $6,000 monthly lease payments and failed to do so. Plaintiff first assigns as error the trial court's decree ordering reformation of the lease agreement. The original instrument provides:

"7. Sunset [plaintiff] shall provide all utilities necessary for the operation of the mill and shall maintain full insurance coverage protecting said equipment[①] against loss by fire and other insurable hazards."

After hearing the evidence, the trial court reformed the above lease clause as follows:

"7. Sunset shall provide all utilities necessary for the operation of the mill and shall maintain full insurance coverage *for the benefit of Waxwing and Sunset* protecting said *leased property* against loss by fire and other insurable hazards." (Emphasis added.)

Plaintiff contends there was "no clear, cogent evidence that the agreement was as alleged by defend-

---

① The first clause of the written instrument refers to a list of leased items. One item is listed as "Complete sawmill which includes, but not limited to: [various items of sawmill equipment and supplies]."

ant Waxwing" and that defendants failed to carry the required burden of proof.

■ The law entertains a presumption which favors the validity and correctness of written instruments. *Dolph v. Lennons, Inc., et al,* 109 Or 336, 355, 220 P 161 (1923); *L. B. Menefee Lumber Co. v. Gamble,* 119 Or 224, 233-34, 242 P 628 (1926). To obtain reformation, the evidence of mutual mistake must be clear, convincing and unambiguous. *Amato v. Amato's Supper Club, Inc.,* 269 Or 520, 524, 525 P2d 1023 (1974); *Mayer/ Kleinknecht v. Bassett,* 263 Or 334, 348, 501 P2d 782 (1972). There must be proof of a valid antecedent agreement. *Moyer et ux v. Ramseyer et al,* 226 Or 122, 134-35, 359 P2d 407 (1961).

■ Browne testified that plaintiff had agreed to maintain full fire insurance coverage on all of the leased property for all of the parties and that the premiums therefor were included in the monthly lease payments, that Waxwing was prepared to purchase its own fire insurance on the leased property in the event that plaintiff rejected the proposals regarding fire insurance. Browne testified, "if the mill burned down we would be held harmless and Mr. Koennecke would be paid by the insurance company for damages."

Yunker confirmed this bargain. He testified that plaintiff "was going to carry the insurance of the mill for fire, adequate insurance for fire to his [plaintiff's] own satisfaction." Furthermore, it was Yunker's understanding that Waxwing would not be responsible for damages to the leased property which may be caused by fire.

Browne's attorney also testified that plaintiff stipulated that he was to carry "all of the fire insurance" and that Waxwing was not obligated to carry fire insurance because plaintiff was to keep his "same insurance up." The written lease agreement was then

prepared by Browne's attorney "based on those understandings."

When questioned about the particular language of the disputed clause, Browne's attorney explained:

"* * * [M]y understanding was all of the personal property would be lumped in as equipment, which would include the complete sawmill, the sawmill building, everything that was connected to the sawmill building. As far as I was concerned it was our understanding that the insurance was covering that * * *. [E]verything was equipment except the real property, as the real property was just the area necessary to store lumber.

"There was no question in my mind when we drew the lease that the fire insurance was going to be for the benefit of both parties. * * *"

Plaintiff's testimony, on the other hand, was rather equivocal and evasive, and the trial court so found. We agree with the trial court. Notwithstanding the subject matter of the disputed clause, plaintiff first denied having any discussion in regard to fire insurance but later admitted that the matter of fire insurance was discussed and agreed upon by the parties. Plaintiff, however, denied that the insurance premiums were to be part of the rent.

On cross-examination plaintiff testified:

"Q What property was suppose [sic] to be covered by insurance according to the lease?

"A Well, I don't think this lease specifically spells out the property.

"* * * * *.

"Q Would that provision [clause 7] refer to all of the equipment and property that was leased by Waxwing other —

"A Yes.

"Q In other words it covers the complete sawmill, everything other than the real property?

"A Yes.

"* * * * *

"Q And do you recall—you recall specifically that Waxwing or Mr. Browne said they were not going to carry the fire insurance because you had it; is that right?

"A Yeah."

We find nothing in the transcript to prompt us to take a different view of the testimony. *See Cook v. Loomis,* 269 Or 52, 55, 522 P2d 1381 (1974). There is no question but that plaintiff had agreed to carry the fire insurance. Furthermore, the testimony of Browne's attorney is consistent with the first clause of the lease agreement, wherein "said equipment" in the disputed clause is referred to, that "personal property" included the *complete* sawmill.

Plaintiff's own testimony tends to support this conclusion. Plaintiff did not believe that the lease "specifically spells out" the property to be insured. Upon further inquiry, plaintiff stated that the disputed clause included coverage for the "complete sawmill."

Under these facts, we conclude that by the terms of the antecedent agreement, plaintiff had agreed to maintain fire insurance on the leased property for the benefit of plaintiff and Waxwing. This is especially so because it would otherwise be unusual for Waxwing to have demanded that plaintiff maintain coverage on the leased equipment alone when the remainder of the leased property was also highly susceptible to fire damage. The quantum of proof which the law requires was met by defendants.

■ Plaintiff also assigns as error the court's holding that the lease as reformed constituted a com-

plete defense. Plaintiff contends that even though the lease is reformed to provide that plaintiff shall maintain insurance coverage for the benefit of both parties, nevertheless he is entitled to recover from defendants because they were negligent.

In *Waterway Terminals v. P. S. Lord,* 242 Or 1, 21, 406 P2d 556 (1965), we held:

> "In several recent cases the courts have held that an agreement of the parties to a lease obligating the landlord to carry insurance on the leased premises is a complete defense to an action by the landlord, or by his insurer as subrogee, against the tenant for negligence in causing a fire which damaged or destroyed the leased premises: [citations omitted]. * * *"

Moreover, we noted that the controlling factor is the parties' general understanding of the fire insurance clause (242 Or at 22).

Notwithstanding, plaintiff argues that he is entitled to recover because the court will not construe an agreement to immunize a party from liability for his own negligence in the absence of an unequivocal agreement to that effect and that this agreement was not that equivocal. A similar argument was rejected in *Commerce & Industry Ins. v. Orth,* 254 Or 226, 231-32, 458 P2d 926 (1969). In the instant case, we conclude, as did the trial court, that the fire insurance clause constitutes a complete defense to plaintiff's first cause of action.

Lastly, it is contended that the trial court erred in granting defendants' motions for involuntary nonsuit to plaintiff's second cause of action. The record shows that plaintiff stored some of his own equipment on the leased premises. Plaintiff contends it was damaged by fire. The parties stipulated that this created a gratuitous bailment.

The trial court granted defendants' motions be-

cause plaintiff also stipulated that he was unable to prove gross negligence on the part of defendants.

On appeal plaintiff argues "that it is not necessary to prove gross negligence in order to recover for destruction of property held by a gratuitous bailee." Plaintiff asserts that gross negligence means "lack of reasonable care under the circumstances." This particular subject has generated substantial confusion in the law of bailments. *See* Brown, The Law of Personal Property § 83 (2d ed 1955); 8 Am Jur 2d, Bailments §§ 198-205, 209-218 (1963); Note, 8 Ark L Rev 503 (1954); Note, 2 SC L Q 90 (1949); Note, 24 Ky L J 334 (1936).

Although a majority of the states adhere to the common law rule that a gratuitous bailee is liable only for gross negligence, Annot., 4 ALR 1196, 1197-199 (1919); 96 ALR 909, 910-11 (1935); 8 Am Jur 2d, supra § 211, courts frequently circumvent this rule by altering the definition or modifying the application of the common law rule. A good example of this is found in *Wilson v. Etheredge,* 214 SC 396, 52 SE2d 812, 814 (1949), wherein the court stated, " 'gross negligence' * * * [is] the failure to exercise reasonable care."

> "A substantial number of jurisdictions have completely abandoned the concept of divisibility of diligence and negligence into degrees and, consequently, apply only one standard of care, that of the ordinary prudent men [sic] under the particular circumstances. [Citations omitted.] * * *." 8 Ark L Rev at 504.

Although we have recognized the existence of gratuitous bailments, *see Jackson v. Steinberg,* 186 Or 129, 138, 200 P2d 376 (1949), we have not passed on the duty of care required of a gratuitous bailee. No cases have been cited to us and we can find none.

As stated in Brown's treatise at page 333, it is

more advantageous to adopt a standard of reasonable care. Such a course of action avoids the inevitable confusion which would be otherwise created by any attempt to define "gross negligence" or "slight care." We need only remind ourselves of the difficulty experienced in guest-passenger cases. *See Williamson v. McKenna,* 223 Or 366, 354 P2d 56 (1960); *Roehr v. Bean,* 237 Or 599, 392 P2d 248 (1964).

■■ We conclude that the standard of care required of a gratuitous bailee is such reasonable care as the particular circumstances of the bailment demand. "[T]he so-called distinction between slight, ordinary, and gross negligence over which courts have quibbled for a hundred years [in gratuitous bailee cases] can furnish no assistance." *Maddock v. Riggs,* 106 Kan 808, 190 P 12, 16 (1920). Thus, the trial court erred in granting defendants' motions for involuntary nonsuit as to plaintiff's second cause of action.

Because the case must be remanded for further proceedings on plaintiff's second cause of action, we point out that plaintiff's second cause of action does not allege a contract to store the plaintiff's equipment or that defendants consented to the arrangement. When the action is in contract, plaintiff must allege the bailment and the bailee's failure to return the bailed property. *National Fire Ins. Co. v. Mogan et al,* 186 Or 285, 290, 206 P2d 963 (1949). *Accord, Shepherd v. Hub Lumber Co.,* 273 Or 331, 541 P2d 439 (1975). *See also* 2 Bancroft's, Code Pleading §§ 958, 959 (1926). *Cf. Carte v. Flury Buick-Jeep, Inc.,* 264 Or 479, 494, 506 P2d 701 (1973). Plaintiff's second cause of action alleges "as a direct and proximate result of the negligence of defendants * * * the plaintiff was damaged * * *." This fact was not pointed out to the trial court at the time of trial and it is not mentioned on appeal to this court.

Affirmed in part; reversed in part; remanded.