SCHAFFNER et ux,
*Respondents - Cross-appellants,*

*v.*

OREGON CENTRAL CREDIT UNION,
*Appellant - Cross-respondent.*

(8107-04417; CA A23040)

663 P2d 1275

Floyd Hinton, Portland, argued the cause for appellant - cross-respondent. With him on the brief was Deich, Deich and Hinton, Portland.

F. James Healy, Albany, argued the cause for respondent - cross-appellant. With him on the briefs was Long, Post, Delapoer & Koos, P. C., Albany.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

The appealing defendant appeals from a decree ordering the reformation of a loan contract to include an agreement by defendant to provide credit disability insurance to protect plaintiffs' obligation under the contract.[1] Plaintiffs cross-appeal from the decree and seek enforcement of the reformed contract by an order enjoining defendant from collecting payments while Mr. Schaffner is disabled and an order crediting plaintiffs' account with a sum equal to the payments due during the period of disability. We review *de novo,* ORS 19.125(3), and affirm.

The facts are not in serious dispute. In October, 1979, plaintiffs applied for a loan of $38,000 from defendant. The purpose of the loan was to consolidate an existing loan of $1,343.86 with other debts, including a mortgage, totalling $30,423.46 and to finance home improvements costing $6,232.68. Plaintiffs testified that their decision to apply for a consolidated loan was based primarily on a desire to obtain credit disability insurance. Mr. Schaffner had suffered an injury in the previous year, and plaintiffs had experienced difficulty in making mortgage payments during the period of his recovery. They communicated their desire for complete insurance coverage of the proposed loan and were told that insurance could be obtained, but that it would be expensive. On October 23, 1979, their loan application was approved. Defendant provided them with a disclosure statement which represented the total amount financed as $42,076.74. That figure included a credit disability insurance premium of $3,839.40. Plaintiffs also received a federally required "truth-in-lending" three-day rescission notice.[2] They signed the disclosure statement and executed a trust deed for the property, securing the loan in the amount of $42,076.74. On November 6, 1979, defendant issued a check to plaintiffs for $6,232.68 with an attached disclosure statement and a loan agreement listing the total amount financed as $38,000, with no provision for credit disability insurance.

---

[1] The named defendants are Oregon Central Credit Union and Pioneer National Title Insurance Company. Oregon Central Credit Union is the only appellant. In the interests of clarity and simplicity we refer to the appellant in the singular as defendant.

[2] *See* Regulation Z, 12 CFR 226.8 (1982).

Mrs. Schaffner called defendant and told its agent, Robie, "This is all wrong." Robie acknowledged the errors in the disclosure statement and informed her that insurance would be provided and that a corrected disclosure statement would be forthcoming. He also authorized them to negotiate the check. Plaintiffs endorsed the check as payees but did not sign again under the paragraph labeled "Credit Insurance Application" on the back of the check. No further disclosure statements were received by plaintiffs. In February, 1980, Mr. Shaffner became disabled, and plaintiffs requested insurance claim forms from defendant. At that time, they were informed that there was no credit disability insurance coverage. Defendant commenced foreclosure of the trust deed and scheduled a sale of the property for October 6, 1981. On May 19, 1981, plaintiffs filed this action for reformation of the loan contract. On plaintiff's motion, the trustee's sale of the property securing the trust deed was temporarily enjoined. The court found for the plaintiffs.

The trial court found that there was a mutual mistake in reducing the agreement of the parties to writing in that it did not contain an agreement to issue credit disability insurance. The court concluded that plaintiffs had no adequate remedy at law and ordered:

"II.

"That the contract between the parties is reformed to include an agreement by Defendant Oregon Central Credit Union to provide disability insurance to protect the Plaintiffs' obligation under said loan in the amount of Twenty-Eight Thousand, Four Hundred Eighteen Dollars and Forty Cents ($28,418.40).

"III.

"That the [defendant Oregon Central Credit Union] be, and hereby [is], restrained from conducting its trust deed sale scheduled for October 6, 1981.

"IV.

"That Plaintiffs be, and hereby are, granted judgment against the Defendant Oregon Central Credit Union for their costs and disbursements incurred herein."

Defendant argues that the court erred in (1) finding that there was a mutual mistake, (2) making findings inconsistent with the cause of suit as pleaded and tried, (3) granting

relief that is impossible to achieve and (4) rewriting the contract, not merely reforming it.

■    Before equity will reform a written contract, the following elements must be proved:

> "* * * 1) that there was a antecedent agreement to which the contract can be reformed; 2) that there was a mutual mistake or a unilateral mistake on the part of the party seeking reformation and inequitable conduct on the part of the other party; and 3) that the party seeking reformation was not guilty of gross negligence." *Jensen v. Miller,* 280 Or 225, 228-29, 570 P2d 375 (1977).

Because written instruments are presumed to be correct, *L. B. Menefee Lumber Co. v. Gamble,* 119 Or 224, 233-34, 242 P 628 (1926); *Dolph v. Lennon's, Inc., et al.,* 109 Or 336, 355, 220 P 161 (1923), the requisites for reformation must be proved by clear and convincing evidence. *Koennecke v. Waxwing Cedar Prod.,* 273 Or 639, 543 P2d 669 (1975); *Amato v. Amato's Supper Club, Inc.,* 269 Or 520, 524, 525 P2d 1023 (1974); *Ray v. Ricketts,* 235 Or 243, 250, 383 P2d 52 (1963).

In defendant's first assignment of error it argues that there was no mutual mistake in reducing the parties' agreement to writing and that reformation was therefore inappropriate. That is also the basis of defendant's fourth assignment, in which it contends that the court did not reform the writing but instead wrote a new contract for the parties. In essence, defendant argues that the writing evidences what the parties intended and that, although the parties originally intended to contract for a loan protected by credit disability insurance, there must have been a change of intention between the time the first and second disclosure statements were issued. Defendant maintains that this is demonstrated by the fact that plaintiffs read the terms of the written agreement and negotiated the check for $6,232.68 with full knowledge that there was no provision for insurance. Defendant does not point to any further negotiations or communications between the parties after the trust deed was executed and the first disclosure statement was signed. It simply argues that, because the record is silent as to communication between the first and second disclosure statements and because plaintiffs knew there was no written provision for insurance at the time they

accepted and endorsed the check, there was no mutual mistake in the writing. We are not persuaded.

■   Plaintiffs presented convincing evidence that a valid antecedent agreement existed between themselves and defendant and that it was incorrectly reflected in the final disclosure statement. They demonstrated that the first disclosure statement, providing for a loan of $42,076.74, including credit disability insurance at a cost of $3,839.40, represents the actual bargain struck between the parties. At the time the disclosure statement with those provisions was signed, plaintiffs executed a trust deed to defendant as security for the loan in the amount of $42,076.74. The contract was not then consummated, because of federal requirements which provide a three-day period in which plaintiffs had the right to rescind the agreement.[3] Plaintiffs did not rescind and subsequently received the check for $6,232.68 along with the second disclosure statement giving the amount financed as $38,000. Defendant does not dispute the terms of the original agreement, nor does it explain why no new trust deed reflecting the lower loan amount was submitted for plaintiff's execution. Testimony that defendant's agent acknowledged the mistaken omissions in the writing and reassured plaintiffs that the terms would be corrected to coincide with those previously agreed upon was not refuted.

■   Cases seeking reformation for a mutual mistake in a writing usually involve an error that is not detected until after the written instrument is executed. However, the fact that both parties recognized that the writing did not conform to their previous agreement does not make the mutual mistake doctrine inapplicable. As the court, quoting from 53 C. J., Reformation of Instruments, § 60(b), p 945, stated in *Manning Lumber Co. v. Voget,* 188 Or 486, 499-500, 216 P2d 674 (1950):

> " 'Mutual mistake in relation to reformation means a mistake shared by both parties. It consists in a misunderstanding reciprocal and common to both the contracting parties, when each alike labored under the same misconception in respect to the terms of a written instrument, *intending at the time of the execution of the instrument to say one thing and by mistake expressing another.* The mistake cannot be mutual if the minds of the parties to the instrument did not meet in a common intent. By mutuality is not meant that both parties must

---

[3] *See* 12 CFR § 226.9 (1982).

agree on the hearing that the mistake was in fact made, but the evidence of the mutuality of the mistake must relate to the time of the execution of the instrument, *and show that at that particular time the parties intended to say a certain thing and by mistake expressed another.'* "

The plaintiffs proved that by mutual mistake the written contract did not reflect the previous valid agreement of the parties. Plaintiffs' negotiation of the check before the correction of the written agreement may not have been the most prudent action, but their negligence, if any, was not so gross and inexcusable as to justify a denial of reformation. *Woodriff v. Ashcraft,* 263 Or 547, 503 P2d 472 (1972); *Wolfgang v. Henry Thiele Catering Co.,* 128 Or 433, 275 P 33 (1929). The trial court properly found that there was a mutual mistake and, by ordering reformation, did not thereby rewrite the contract of the parties.

■ Defendant next claims as error that the court based its order of reformation on a finding of fraudulent misrepresentation by defendant's agent, which is inconsistent with the cause of suit based on mutual mistake on which the case was pleaded and tried. Defendant did not move against the pleadings, nor did it object to the evidence presented at trial. It now claims that it was surprised and prejudiced, because it had no reason to believe that it was necessary to refute testimony of its agent, Robie, under the theory of mutual mistake. The thrust of defendant's argument appears to be that the court's findings of fact as to representations by Robie are inconsistent with the court's conclusions of law. They are not. The court did not base its judgment on a finding that Robie made a fraudulent representation on which plaintiffs relied to their detriment. The judge made that clear at the hearing on defendant's objections to the findings and conclusions, when he stated:

"It was my finding —, that simply what Mr. Robie failed to do was make the written contract conform to the actual contract, and that is the basis for reformation."

The complaint is not a model of clarity, nor are the findings of fact and conclusions of law artfully drawn. However, with the aid of all allowable inferences, *Oregon Lbr. v. Dwyer Overseas Timber Products,* 280 Or 437, 571 P2d 884 (1977); *Nicholson v. Jones,* 194 Or 406, 242 P2d 582 (1952), we are satisfied that the theory pleaded, contract reformation due to mutual mistake,

was thoroughly litigated and is the basis for the court's findings, conclusions and judgment.

■ The final claim of error is that the relief ordered by the court is impossible. Defendant maintains that, because it is not an insurance company, it cannot "issue" insurance to plaintiffs. The judgment does not require it to. The court reformed the contract "to include an agreement by defendant Oregon Central Credit Union to provide disability insurance to protect plaintiffs' obligation under said loan." It did not require defendant to issue a policy of insurance. The judgment simply reforms the terms of the agreement to include insurance coverage of plaintiffs' obligation to defendant in the amount of $28,418.40. Defendant cites no authority for the proposition that a court of equity does not have the power to reform a contract to include such a provision, and we find none. Rather, we find precedent in *Koennecke v. Waxwing Cedar Products, Ltd., supra,* in which the Supreme Court affirmed a decree that reformed a lease agreement to include a provision that the lessor would maintain full insurance coverage for the benefit of both the lessee and the lessor protecting the leased property against loss of fire and other insurable hazards. The trial court had ordered the reformation of the lease after the improvements and equipment on the leased property were destroyed by fire. The relief ordered here is not impossible to achieve.[4]

■ On cross-appeal, plaintiffs contend that the relief did not go far enough, claiming that the trial court should have reformed the contract to require insurance coverage for the full amount of the loan, enjoined the defendant from taking any action to collect payments that would have been covered by insurance and ordered defendant to credit plaintiffs' account with an amount equal to the monthly payment during the period of disability. Plaintiffs' claims are not well taken. The court found that the maximum amount of insurance coverage available to plaintiffs would have been $28,418.40. There is

---

[4] Defendant requests as an alternative to reversing the judgment that it be granted a new trial. Its brief does not cite or argue the grounds upon which a new trial should be granted but simply refers us to a similar request made to the trial court at the time defendant filed its objections to the court's findings of fact and conclusions of law. The motion for a new trial was not made in accordance with ORCP 64D, in that the grounds of the motion, as listed in ORCP 64B, were not plainly specified. The trial court did not address defendant's request for a new trial. We also decline to do so.

evidence in the record to support that finding, and we find no reason to disturb it.

■ As to plaintiffs' claim that the court should have enjoined defendant from acting to collect payments and ordered defendant to credit plaintiffs' account, we are equally unpersuaded. Plaintiffs would have us speculate that defendant will not fulfill its obligations under the contract as reformed. We must assume that each party will abide by the terms of the court's order. Defendant has been enjoined from conducting the trust deed sale scheduled for October 6, 1981. The terms of the reformed contract require defendant to protect plaintiffs' obligation to a specified amount. We do not find it appropriate to order further injunctive relief that may never be required.

Affirmed.