Argued and submitted March 2, on appeal, reversed in part and remanded with
instructions, otherwise affirmed; cross-appeal dismissed June 22, 1988

# ALLEN & GIBBONS LOGGING, INC.,
*Appellant - Cross-Respondent,*

*v.*

# BALL et al,
*Respondents - Cross-Appellants.*

(87-CV-0162; CA A45801)

756 P2d 669

William C. Wolke, Roseburg, argued the cause for appellant. With him on the brief were Luoma, Kelley, Wolke & Mays, Roseburg.

Gary D. Rossi, Coos Bay, waived appearance for respondents.

Before Warden, Presiding Judge, and Van Hoomissen and Graber, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiff appeals a judgment which denied it costs and attorney fees on its claim against defendants and denied its request for reformation or a set off and which awarded defendants damages on their counterclaim. We affirm in part and reverse and remand in part.[1]

Defendants are in the business of buying and selling timber and hiring others to log it. Plaintiff is a logging company hired by defendants to log two of its purchases: "South Elkhorn" and "Acquired." In November, 1984, defendant Lewis Ball (Ball) contacted Lawrence Gibbons regarding the Acquired sale, which consists of two units, one containing 92 percent of the sale and the other 8 percent. The first unit could be logged by tractor. However, the second had to be logged with skyline logging, which required additional equipment and manpower. Ball stated that defendants would pay $60 per thousand board feet logged from the sale, with an $8 per thousand deduction for logging previously done by another logger. Gibbons responded that he would have to see the areas first. They met later, and Ball gave Gibbons the sale prospectus. The men then drove to the area, which at the time was covered with four feet of snow. Ball showed Gibbons only the first unit. Gibbons agreed to take the job. The parties signed a contract which covered the entire Acquired area, not just the first unit, and did not provide for the $8 per thousand reduction for logging previously completed by another logger. Gibbons also contracted to log South Elkhorn.

Plaintiff logged through the end of 1984, but had to stop in January, 1985, because of deep snow. In June, 1985, Ball wrote plaintiff advising it that "the unit that you quit logging last winter has to be completed by July 1, 1985, which is Unit No. 1." Shortly thereafter, plaintiff finished logging that unit.

In September, 1985, Rand, defendants' employe, called Gibbons and asked him to finish logging. Gibbons replied that he was not obliged to log the second unit. Rand said that the contract covered both. Gibbons continued to

---

[1] Defendants have moved to dismiss their cross-appeal. The motion is allowed. They also waived appearance on the appeal.

assert that he was not obliged and said that all of his equipment was busy but that he would see if he could find a smaller logger to do the work. Gibbons testified that he suggested that Rand contact Peter & Sons. He also testified that he contacted Osborne of Triple O Logging and suggested that Osborne contact Ball. Osborne testified that he was looking for work in the area, that he discussed logging the second unit with Ball and that Ball suggested that Osborne get a prospectus on the sale, which he did. Osborn testified that he had tried several times to reach Ball after that and left messages, but Ball never called. Osborne also testified that he was willing and able to log the unit for $80 per thousand. It was never logged, and on March 30, 1987, the United States Forest Service assessed defendants a $9,906.10 penalty.

Plaintiff completed logging South Elkhorn on October 1, 1985. It filed a complaint alleging that it had not been paid the full contract price for logging South Elkhorn. Defendants counterclaimed, alleging that plaintiff had failed to complete its contract on Acquired, resulting in defendants' losing their profit and having to pay the penalty to the Forest Service. Plaintiff replied, seeking either reformation of the Acquired contract on the ground that it had not agreed to log both of the units or, in the alternative, a set off.

At trial, plaintiff moved to amend its pleadings to claim that interest should accrue on the damages due on South Elkhorn from October 1, 1985, rather than from January 1, 1986, as claimed in the amended complaint. Defendants did not object, and the court allowed the motion. Gibbons testified that he and Ball discussed only one unit of Acquired and the procedures and costs of logging only that unit, that he agreed only to do tractor logging for $60 per thousand board feet, that the June, 1985, letter regarding the work to be completed referred only to that unit and that the contract was intended to cover it. Ball testified that, although they only visited one unit, the contract was to log both units, that Gibbons saw the prospectus for the sale and attended a prework meeting that clearly dealt with both units and that Ball would not have made any other agreement because he could not have hired anyone else to log the second unit, because it was so small.

The trial court held:

"1.) The basis for determining moneys due under the

South Elkhorn contract was properly computed under the Oregon State Forestry Department Detail Certificate List (PO5) submitted into evidence as Defendant's [sic] Exhibit #106. Plaintiff is entitled to judgment against the defendants on plaintiff's amended complaint in the sum of $13,1355.92 [sic], with interest from October 1, 1985.

"2.)   The contract between the parties (Exhibit 101) on Acquired Sale is clear and unambiguous. The summary of the prework meeting (Exhibit 112) as signed by the plaintiff clearly shows two units in the sale. Defendants are entitled to judgment against the plaintiff in the sum of $14,796.10. This is computed as follows.

| | |
|---|---|
| $  4,896.00 | Loss of Profit |
| 9,906.10 | Damages per (Exhibit 108) |
| $14,796.10 | to the Forest Service" |

Defendants prepared a judgment[2] which included costs and disbursements. Plaintiff filed a motion for a new trial on the ground that the trial court did not rule on its request for a set-off or on its argument that the contract controlled the measure of damages. It also filed an objection to defendants' cost bill, arguing that plaintiff is the prevailing party entitled to costs, disbursements and attorney fees, and submitted a cost bill. Defendants filed an objection to plaintiff's cost bill, stating that they, not plaintiff, prevailed. The trial court denied plaintiff's motion for a new trial but granted its objection to defendants' cost bill. Plaintiff filed a new cost bill, and defendants again objected. The court ruled:

"Costs and disbursements are not awarded to either side. See the judgment dated August 28, 1987."

■   Plaintiff first contends that the trial court erred in denying its request to reform the contract to specify that plaintiff had to log only one unit. Before equity will reform a

---

[2] The trial court's opinion letter provided for interest to begin accruing as of October 1, 1985. The judgment purports to quote the opinion letter, but uses the date of May 12, 1986. However, the judgment also states:

"IT IS THEREFORE ORDERED AND ADJUDGED THAT:

"FIRST:  Plaintiff has a judgment against Defendants, and each of them, for the sum of $13,155.92 with interest thereon at the rate of 9% per annum from October 1, 1985, until paid;

"SECOND: Defendants have judgment against Plaintiff for the sum of $14,796.10 with interest thereon at the rate of 9% per annum from the date hereof until paid."

written contract, the party seeking reformation must prove: (1) that there was an antecedent agreement to which the contract can be reformed; (2) that there was a mutual mistake or a unilateral mistake on the part of the party seeking reformation and inequitable conduct on the part of the other party; and (3) that the party seeking reformation was not guilty of gross negligence. *Jensen v. Miller,* 280 Or 225, 228-29, 570 P2d 375 (1977).

■ ■   Because the terms in written instruments are presumed to be correct, requisites for reformation of writings must be proved by clear and convincing evidence. *Koennecke v. Waxwing Cedar Prod.,* 273 Or 639, 643, 543 P2d 669 (1975); *Schaffner v. Oregon Central Credit Union,* 63 Or App 118, 122, 663 P2d 1275, *rev den* 295 Or 446 (1983). Plaintiff contends that it is clear that the parties intended to include only the first unit of Acquired in their contract. The trial court found that the prework meeting covered both units. The prospectus which Gibbons saw also included both units. We conclude that plaintiff has not proven by clear and convincing evidence that there was an antecedent agreement and that the trial court did not err in denying reformation.

■   Plaintiff next contends that, if the contract is not reformed, the trial court erred in allowing defendants an $8 per thousand reduction for logging done by the previous logger, because that was not part of the written contract.[3] We disagree.

> " 'Mutual mistake in relation to reformation means a mistake shared by both parties. It consists in a misunderstanding, reciprocal and common to both contracting parties, when each alike labored under the same misconception in respect to the terms of a written instrument, *intending at the time of the execution of the written instrument to say one thing and by mistake expressing another.* The mistake cannot be mutual if the minds of the parties to the instrument did not meet in a

---

[3] We are unable to determine from the record whether the trial court did in fact allow defendants an $8 per thousand board feet reduction. The court did not make findings of fact or explain how it calculated the damages due on the Acquired sale; it simply stated the final amount due for lost profits and the penalty. We are not able to determine whether the court denied plaintiff's motion for a set-off or whether it set defendants' damages after considering the $8 reduction. However, because our review of the reformation issue is *de novo,* ORS 19.125(3), we need not remand for findings of fact.

common intent. By mutuality it is not meant that both parties must agree on the hearing that the mistake was in fact made, but the evidence of the mutuality of the mistake must relate to the time of the execution of the instrument, *and show that at that particular time the parties intended to say a certain thing and by mistake expressed another.'* " *Manning Lumber Co. v. Voget,* 188 Or 486, 499, 216 P2d 674 (1950), *quoting* 53 CJ "Reformation of Instruments," § 60(b). (Emphasis in original.)

Plaintiff's reply and its evidence show that the parties intended the contract to provide for an $8 per thousand board feet reduction for timber cut by the previous logger. Defendants' evidence agreed. Even though the pleadings were not amended, the parties tried the issue by consent, ORCP 23B,[4] and there is sufficient evidence of mutual mistake to reform the contract to provide for the reduction.

■      Plaintiff contends that the trial court erred in awarding defendants lost profits damages. It argues that the contract specified the measure of damages for breach and that that provision must be enforced. The contract provides:

"(6)   In the event logger fails to perform any of the terms and provisions of this contract USFS #072758 applicable to logging operation, and owner is required to perform the same, or obtain another logger to perform same, after three (3) days advance notice to logger of the required performance, logger shall be responsible and liable to owner for any additional cost related to such substituted performance."

That provision relates to the measure of damages only if defendants sought substitute performance. It does not state that defendants' only remedy was to obtain a substitute logger and require plaintiff to pay the difference.

■      Plaintiff next argues that defendants are not entitled to recover the penalty or their lost profits, because they failed

---

[4] ORCP 23B provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

to mitigate their damages.[5] It argues that, if defendants had hired another logger, they would not have suffered lost profits (other than the difference in price charged by the other logger) and would not have had to pay the penalty to the Forest Service. When a party seeks to recover damages for breach of contract, it has the burden of proving the objective unavailability of substitute performance. Proof of its subjective inability to find a substitute is not sufficient. *United Engine Parts v. Ried,* 283 Or 421, 432, 584 P2d 275 (1978).

■ The burden was on defendants to show that a suitable substitute was not reasonably available during the period in question. Ball testified that he was unable to find substitute performance. That was a statement of subjective inability to find a substitute and was not sufficient to meet the burden of proof. In addition, plaintiff presented evidence at trial that it had found a logger who was ready, willing and able to do the work. Therefore, the trial court erred in not finding that defendants failed to mitigate damages. Defendants' recovery is limited to the amount which they would have recovered had they secured the substitute performance. Plaintiff presented evidence that another logger would have done the job for $80 per thousand board feet. That is $28 per thousand higher than the contract price, as reformed. Thus, defendants' damages are limited to $28 per thousand for the 130,000 board feet not logged, or $3,640.

■ Plaintiff next contends that defendants are not entitled to any damages, because they did not give plaintiff the required notice. The contract provides that, if defendants are required to perform or obtain substitute performance "after three (3) days notice to [plaintiff] of the required performance," plaintiff shall be liable for any additional cost. Even if that notice provision does apply when the owner does not seek substitute performance, plaintiff was given notice when defendants' employe, Rand, contacted plaintiff to finish logging. Nothing in the contract requires that notice to be in writing.

■ Plaintiff finally contends that the trial court erred in

---

[5] The trial court did not make findings of fact regarding the mitigation issue. However, in order to award damages to defendants, it must have found that they did not fail to mitigate damages.

denying its motion for attorney fees as the prevailing party. The trial court denied both parties' motions for costs, disbursements and attorney fees. The contract provides:

"(11)  In the event either party is required to enforce any of the terms of this agreement, the prevailing party shall be entitled to be awarded reasonable attorney fees and costs by the court."

We agree that the court was required to award costs and attorney fees to the prevailing party. *Ladum v. City of Reedsport,* 83 Or App 666, 669, 733 P2d 66 (1987); *Pelett v. Welch,* 71 Or App 761, 764, 694 P2d 574 (1985). Plaintiff is entitled to a judgment of $13,155.92 with interest at a rate of 9 percent per annum from October 1, 1985, on the South Elkhorn Contract. Defendants are entitled to a judgment of $3,640.00 with interest at the rate of 9 percent per annum from the date of the original judgment. Plaintiff is the party who receives the net award and, therefore, is the prevailing party and is entitled to attorney fees. *Pelett v. Welch, supra,* 71 Or App at 763.

On appeal, reversed in part and remanded with instructions to modify judgment awarding plaintiff $13,155.92 by awarding costs, disbursements and attorney fees, and to modify defendants' judgment by reducing it to $3,640.00 with interest at 9 percent per annum from date of original judgment; otherwise affirmed. Cross-appeal dismissed.