Argued and submitted April 20, reversed and remanded November 4, 1992

## KLAMATH COUNTY 9-1-1 COMMUNICATIONS AGENCY,
an ORS Chapter 190 Intergovernmental Agency,
*Appellant,*

*v.*

## STATE OF OREGON,
by and through
DEPARTMENT OF STATE POLICE,
*Respondent.*

(9002628-CV; CA A70155)

840 P2d 751

Michael L. Spencer, Klamath Falls, argued the cause and filed the briefs for appellant.

Richard Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

**WARREN, P. J.**

Plaintiff appeals from a judgment granting defendant's counterclaim for reformation. We reverse.

In 1981, the Oregon Legislature mandated that every public and private safety agency in the state participate in a 9-1-1 emergency reporting system. ORS 401.720. To comply with that directive, various public and private safety agencies entered into cooperative agreements establishing regional 9-1-1 systems. *See* ORS 190.010. Plaintiff is the agency established to provide emergency reporting services in the Klamath County region. Defendant is one of the agencies served by plaintiff and is a signatory to the agreement that created plaintiff.

■ The 9-1-1 service agreement provides that each agency that receives services from plaintiff will pay a yearly buy-in fee based proportionately on that agency's proportion of the previous year's call volume. When defendant refused to pay the assessed fee, plaintiff brought this breach of contract action. Defendant sought to reform the contract to reflect its purported agreement with plaintiff that it would not be assessed a buy-in fee unless the legislature had provided an appropriation for that fee in defendant's budget.[1] Plaintiff contends that the court erred in reforming the contract, because defendant failed to prove that the parties had an antecedent agreement. We review *de novo. Frick v. Hoag*, 277 Or 135, 138, 559 P2d 879 (1977).

■ Defendant claims a mutual mistake. To obtain reformation based on that theory, it must prove by clear and convincing evidence "(1) that there was an antecedent agreement to which the contract can be reformed; (2) that there was a mutual mistake * * * and (3) that the party seeking reformation was not guilty of gross negligence." *Allen & Gibbons Logging v. Ball*, 91 Or App 624, 629, 756 P2d 669 (1988). To prove that there was an antecedent agreement, the party seeking reformation must show "that the parties thereto shall have previously reached a complete mutual understanding with respect to all of the essential terms of their agreement." *Manning Lumber Co. v. Voget*, 188 Or 486,

---

[1] It is undisputed that the legislature did not appropriate funds for defendant to pay the buy-in fee.

500, 216 P2d 674 (1950). In sum, the parties must have reached an agreement that itself constituted a contract. "[T]o warrant reformation for mutual mistake, the error must have been in the *drafting* of the instrument and not in the *making* of the contract." *Interior Elevator Co. v. Limmertoth*, 278 Or 589, 597, 565 P2d 1074 (1977). (Emphasis in original.)

■    As proof of an antecedent agreement, defendant submitted a letter sent by Superintendent Brandaw of the Oregon State Police (OSP) to Richard Suber, who was then the chairperson of the planning committee that was organizing plaintiff. The letter, dated June 19, 1986, provides, in part:

"This Department is in receipt of the Klamath County 9-1-1 Communications System Intergovernmental Agreement.

"* * * * *

"As you are aware, we have no money in the current budget to finance our participation. We understand that there would be no financial obligation until the system is operational for one year.

"Looking to the future, and wanting to be up front, we cannot guarantee that we will have the money in our budget after the one year period.

"The budget being prepared for the 1987 Legislature will request funding for our participation, however, this request is subject to Legislative approval.

"In the remote possibility that the funding is not provided for by the Legislature, we would need the option of having the ability to participate on a call relay basis, without suffering a buy-in or user fee.

"We are supportive of the 9-1-1 and Central Dispatch Systems, however, we want no misunderstanding of our intentions."

Suber admitted receiving that letter and that he understood that OSP did not, at the time, have any funding for 9-1-1. Defendant also offered the testimony of OSP Lieutenant Hanson. He testified that he had attended a planning committee meeting and had told the members in attendance that OSP had no current funding to participate in the system and that, without legislative appropriations, OSP would be unable to pay any funds under the agreement. He also testified that he did not know exactly when that meeting was, how

many members attended or what the response of those members who did attend was. OSP signed the agreement on July 10, 1986.

OSP's evidence shows that plaintiff was aware that OSP needed a way out of the contract should the legislature fail to fund OSP's participation. However, it does not show that the parties ever discussed how the agreement should address OSP's concerns. From plaintiff's perspective, the agreement provided OSP a way out. The agreement requires no financial participation by any party until the fiscal year 1988-89.[2] It also provides that any party may terminate the agreement without cause on six months notice. If OSP wanted out, it could have terminated its participation when the legislature failed to appropriate funds in 1987. Accordingly, it is just as likely that plaintiff thought the agreement reflected the parties' intent as it is that plaintiff had agreed to some other, unwritten provision providing defendant an alternative "out."

In *Coover v. G & J Electric*, 285 Or 247, 590 P2d 720 (1979), the plaintiff sued for breach of contract. Under the terms of the contract, the defendant was obligated to pay the plaintiff amounts collected by it on certain accounts receivable. The defendant sought to reform the agreement to reflect its intent that the plaintiff receive only half of the amounts collected on those accounts. Both parties testified that they had orally agreed to split the assets of the company evenly, including the outstanding accounts receivable. The attorney who drafted the agreement testified that those were his instructions. However, the plaintiff also submitted evidence showing that the parties had discussed whether the plaintiff should receive additional compensation. He also testified that he thought the written agreement reflected the defendant's acquiescence to his request for that additional compensation. The court held:

> "The [defendants] were given ample opportunity to study the agreement prior to signing. Although the agreement clearly provides that plaintiff is to receive all amounts collected on the outstanding accounts, the [defendants] testified

[2] Consequently, plaintiff did not bill OSP for the first year that it participated in the system. At trial, OSP conceded that plaintiff's failure to bill it for the services that it received that year provides no evidence of an antecedent agreement.

that they were unaware of the mistake until some time later. There is no question that the document as drafted did not express [the defendants'] understanding of the agreement. However, we are of the opinion that defendant has not sustained its burden of establishing by clear and convincing evidence that there was a definite antecedent oral agreement." 285 Or at 253.

Defendant's evidence here is even less convincing. In *Coover*, the evidence showed that there was a prior agreement but failed to show that that was the final agreement. Here, the evidence does not even reflect another agreement. It shows only that defendant communicated to plaintiff that it needed an "out" from the contract, should the legislature fail to appropriate funds, and that plaintiff was aware of that fact. Defendant failed to prove, by clear and convincing evidence, that its agreement with plaintiff was other than as written.

Reversed and remanded.