Argued and submitted March 7, judgment vacated; remanded with instructions
October 22, 1997

Charles R. ALGER,
*Appellant,*

*v.*

Larry L. SMITH
and Sylvia L. Smith, Trustees under the
Smith Loving Trust dated April 29, 1991;
Angel Navarro and Debra Navarro,
*Respondents.*

(93-CV-0252)

Angel NAVARRO
and Debra Navarro,
*Respondents,*

*v.*

Charles R. ALGER,
*Appellant.*

(93-CV-0249; CA A89677)

948 P2d 1244

John E. (Jack) Davis argued the cause and filed the brief for appellant. With him on the brief was Myric, Seagraves, Adams, Davis & Preslar.

Larry B. Workman argued the cause and filed the brief for respondents Angel Navarro and Debra Navarro.

No appearance for respondents Larry L. Smith and Sylvia L. Smith.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff Alger and defendants Navarro own adjacent properties. Defendants Smith are the common grantors of both properties. The dispute in this case involves the use of two roads across Navarros' property for access to Alger's property. The trial court declared an easement by implication in favor of Alger, limited in scope, over one of the roads. Alger appeals and assigns error to the trial court's decision not to reform his deed from the Smiths to include express easements that would permit his use of both roads without the limitation imposed by the trial court. We review *de novo*, ORS 19.125(3); *Thompson v. Schuh*, 286 Or 201, 593 P2d 1138 (1979), and remand with instructions to reform the deed.

Before the conveyances to Alger and Navarros, the Smiths owned approximately 360 acres of land in Josephine County. The property consisted of five tax lots. Lots 200 and 501 lie west of lots 100, 400 and 502. (See map at 57.) South of the property is Happy Camp Road, a county road. In the fall of 1993, Smiths conveyed the eastern lots (100, 400 and 502) to Alger, and a few days later they conveyed the western lots (200 and 501) to Navarros. None of the lots sold to Alger is adjacent to Happy Camp Road. Tax lot 500, which is owned by Fisher, who is not a party to this proceeding, lies between Alger's property and Happy Camp Road.

Tax Lot 501, the southern-most lot of the two lots sold to Navarros, is adjacent to Happy Camp Road. A dirt road known as "the Old Happy Camp Road"[1] enters Lot 501 from Happy Camp Road and travels generally east across Lot 501 and Lot 500. On Fisher's land (Lot 500), the road heads southeast just to the south of Elder Creek, which is the southern boundary of Lot 502, and then enters Alger's property at the western edge of Lot 400. Before Old Happy Camp Road leaves Lot 501 to cross the lot owned by Fisher, what the parties refer to as the "spur road" branches off to the northeast and enters Alger's property on Lot 502.

---

[1] There was evidence at trial that the county relocated Happy Camp Road to its present location in the 1950's.

After Smiths conveyed lots 200 and 501 to Navarros, Alger entered the Navarros' property with heavy equipment and began removing brush and trees. As a result, Navarros sued Alger for trespass, timber trespass and conversion and sought declaratory and injunctive relief. In his amended answer to Navarros' claims, Alger alleged that he owned easements over Navarros' property. He also admitted coming onto their property for the purpose of relocating an easement but alleged that his entry was pursuant to an oral agreement with Navarros.

Alger also asserted three alternative counterclaims in his amended answer in which he sought declarations that he had express easements, easements by implication and easements by necessity over Old Happy Camp Road and the spur road.[2] Thereafter, Alger sued Smiths and Navarros, seeking to have the deed from Smiths reformed to include two express easements that he alleged were inadvertently left out of the final warranty and trust deeds prepared by the title company handling the conveyance from Smiths and for a declaration that those easements encumbered Navarros' property. The two cases were consolidated for trial.

After viewing the property and receiving evidence, the trial court granted Alger a perpetual easement by implication across Navarros' property (Lot 501) conforming to the location of Old Happy Camp Road.[3] The judgment restricted Alger's use of the easement to ingress and egress for logging and forestry purposes. With respect to the spur road, the court found

> "that the spur should be excluded for primarily two reasons. First, the spur did not appear to be nearly as well maintained as the principle [sic] road which is the old Happy Camp road and that the references in the preliminary title report would not have given Mr[.] Navarro notice of its inclusion."

---

[2] Alger also counterclaimed, alleging that Navarros abused civil process, wrongfully obtained a restraining order and wrongfully interfered with his easements. None of those issues is before us on appeal.

[3] Exhibit 1, referred to and incorporated in the judgment, gives a legal description of a 30-foot-wide easement, and Exhibit 2 is a line drawing of the location of the easement. Each conforms only to the Old Happy Camp Road and not to the spur road.

On appeal, Alger assigns error to the restrictions that the judgment placed on the easement along Old Happy Camp Road, the trial court's decision not to declare an easement in favor of Alger to use the spur road and to the court's failure to reform the deed between himself and the Smiths.

First, we address Alger's claim for reformation. If the deed is reformed to read as Alger alleges, he would thereby receive all the relief that he seeks: the unrestricted use of two easements for purpose of ingress and egress from Happy Camp Road. In *Manning Lumber Co. v. Vogt*, 188 Or 486, 500, 216 P2d 674 (1950), the Supreme Court set out the general principles for reformation of an instrument based on mutual mistake:

> "The purpose of reformation by a court of equity is to make an erroneous instrument express correctly the real agreement between the parties; no court can make a new contract for them. Where a written instrument is merely intended to record a prior, definite, and specific oral understanding of the parties, but, because of mutual mistake, that instrument fails to set out the prior agreement in some material respect, a court of equity will ordinarily reform it."

In other words, "to warrant reformation for mutual mistake, the error must have been in the *drafting* of the instrument and not in the *making* of the contract." *Interior Elevator Co. v. Limmeroth*, 278 Or 589, 597, 565 P2d 1074 (1977). (Emphasis in original.) "To obtain reformation, the evidence of mutual mistake must be clear, convincing and unambiguous." *Koennecke v. Waxwing Cedar Products*, 273 Or 639, 643, 543 P2d 669 (1975).

From our review of the evidence in this case, it is clear that the Smiths as grantors and Alger as grantee intended that the warranty deed include the conveyance of certain express easements and that the deed was executed without the inclusion of those easements due to a mutual mistake. Smiths and Alger approved the language of the deed, which included the express easements, before closing. The representative of the title company that handled the conveyance testified that she knew that the easement language was to be included in the deed and that, because of her error, it was left out of the deed that was tendered to Smiths and

Alger for execution. The title company's mistake was not discovered until after Smiths conveyed lots 200 and 501 to Navarros.[4]

On appeal, Navarros do not dispute that the Smiths intended to convey the express easements set out in the language that was left out of the deed to Alger. They argue that they were

> "bona fide purchasers without notice of any purported mistake, and where they cannot be restored to their original position, the court should not reform the deed to include conveyance of a perpetual easement."

Their argument misses the mark. The question is not whether they had notice of the mistake that resulted in the easements being left out of the warranty deed but whether they had notice of the existence of the easements before they purchased their property. *Zink v. Davis*, 203 Or 49, 53, 277 P2d 1007 (1954). To resolve that question we must first determine what easements Smiths intended to convey to Alger and, then, whether Navarros had notice of the existence of those easements.

The construction of the terms of an instrument is governed by statute. ORS 42.220 provides:

> "In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."

ORS 42.230 provides:

> "In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

The easement language that was omitted in the deed by the title company read:

---

[4] The Smiths defaulted in the action to reform the deed.

"TOGETHER WITH a perpetual easement for all purposes of ingress and egress on a presently existing road that extends from the County Road known as 'Happy Camp Road' in a generally East-West direction over and across the following described property: [legal description of tax lot 501].

"ALSO TOGETHER WITH an appurtenant easement as set forth in Volume 253, page 334, Josephine County Deed Records."

We focus first on the easement extending from Happy Camp Road. It describes a single road that crosses tax lot 501. There are at least two possibilities. It could refer to the Old Happy Camp Road as it crossed Lot 501 to Lot 500, or it could refer to the Old Happy Camp Road as far as the spur road, then along the spur road to Lot 502.

To give context to the description of the first easement, we look at the second easement. It refers to an appurtenant easement as originally described in the Josephine County deed records. That deed from Smiths' predecessor in interest, who owned lots 502 and 500 at the time, conveyed tax lot 502 along with the following easement:

"TOGETHER with a perpetual easement for roadway over the existing road, to be used jointly with others as a nonexclusive way, and to provide ingress to, and egress from, the above described tract [lot 502] to Happy Camp Road; said existing easement being situated in the Northwest Quarter of the Southeast Quarter, and in the portion of the Southwest Quarter of the Southeast Quarter of said Section 25, lying North of Happy Camp Road."

The second easement describes only that portion of the Old Happy Camp Road that is within Lot 500, which the grantor owned, and, on its face, it could not refer to the spur road in tax Lot 501, which the grantor did not own. It is also significant that at the time that Smiths' predecessors in interest conveyed Lot 502, an express easement over Old Happy Camp Road across Lot 501 had been reserved for the benefit of Lot 500 and Lot 502 by a previous deed. We conclude that, in order to give effect to the express purpose of the second easement in the Smith/Alger deed, *i.e.*, "to provide ingress to, and egress from, [Lot 502] to Happy Camp Road,"

the second easement must, by necessary implication, include the right to use Old Happy Camp Road across Lot 501 all the way to Happy Camp Road.

Our having determined that the second easement refers to Old Happy Camp Road as it traverses the breadth of Lot 501 and then across Lot 500 means that the first easement could be redundant of the second easement or it could refer to another easement, *i.e.*, the spur road. According to ORS 42.230, "where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all." We conclude that, in order to give effect to both easements, the first easement must have been intended to describe an easement that is discrete from what is described in the second easement. On this record, that can mean only that Smiths intended to convey two easements to Alger, one from Happy Camp Road along Old Happy Camp Road and one along the spur road to Lot 502. We note that neither of the easements contains any restrictions on use.

■ In order for Alger to prevail on his claim to reform the deed to include the easements, there also must be evidence in the record demonstrating that Navarros had notice of the existence of the easements. *Crahane v. Swan*, 212 Or 143, 149, 318 P2d 942 (1957) ("It is an almost universal rule of equity not to grant relief by way of reformation to the injury of innocent third persons such as bona fide purchasers * * * who without notice have acquired intervening or vested rights and who cannot be placed in statu quo."). The following facts are undisputed: Before purchasing their property, Navarros were originally interested in purchasing the entire property, including those lots that Smiths conveyed to Alger. They knew that Smiths had conveyed the eastern lots to Alger at the time of their purchase. Navarros twice inspected the property, and, on at least one occasion, Mr. Navarro, along with Mr. Smith, walked along Old Happy Camp Road onto Fisher's property and along the spur road to Lot 502.

The evidence is conflicting about when the Navarros learned that the Smiths intended to convey easements to Alger. Mr. Smith testified that, when he walked along the roads with Mr. Navarro, he told Navarro that Alger had a right-of-way over them to his property. Mrs. Smith testified

that she told Mr. Navarro that Old Happy Camp Road was Alger's right-of way to his property. She also testified that Kevin Ray, a real estate agent, was present at the time.

Ray testified that he was present when Mr. Smith and Mr. Navarro walked the property and that the subject of the use of the roads came up. He believed that Smith told Navarro about Alger's easements to his property. Ray also testified that, before the conveyance from the Smiths to Navarros closed, he reviewed a preliminary title report with Navarros that excepted possible easements over existing roads. Ray also testified that Mr. Navarro contacted him to set up a meeting with Alger to discuss exchanging easements. This testimony was corroborated by Alger, who testified that he met with Navarro and believed that he had negotiated an exchange of easements across Lot 501.

Mr. Navarro testified that Smith never told him about the easements across Lot 501 for access to Alger's land to the east. He contended that he specifically asked Smith whether anyone else would have the use of the roads and that Smith assured him that no one else would be allowed to use them. He further testified that he did not receive the preliminary title report until after the sale to him closed and that Alger had contacted him about *acquiring* an easement across Lot 501, not about exchanging easements.

Both roads are readily observable on the ground. Mr. Navarro walked along the roads and knew that they left his property in an easterly direction. With respect to Navarros' testimony that they did not receive the preliminary title report that raised questions about easements on existing roads until the sale to them closed, the trial court made a specific finding to the contrary. Where issues of credibility of the witness are involved, we give great weight to the trial court's determinations. *Held v. Held*, 8 Or App 280, 282, 493 P2d 1388 (1972). In view of the trial court's finding, we are persuaded that Smiths informed Navarros that they intended to convey the easements to Alger and that Navarros purchased their property with notice of the easements. Therefore, there is no bar in equity to reforming the deed from Smiths to Alger to include the easements for which they actually bargained.

*Zink v. Davis*, 203 Or 49, 53, 27 P2d 1007 (1954) (" 'Reformation will be allowed not only as against the original parties to an instrument, but also as against those claiming under them in privity, such as * * * purchasers with notice of the facts.' " (quoting 45 Am Jur 623, *Reformation of Instruments,* § 66)).[5] Also, the easements contemplated by the parties to be included in the deed did not contain any restrictions on ingress and egress. Thus, we disagree with the trial court's restrictions on the scope of the easements.

Judgment vacated. Remanded with instructions to enter a judgment reforming the deed from Smiths to Alger to include the omitted easements.

---

[5] Because the second easement traverses property owned by Fisher, who is not a party to this proceeding, we do not decide what rights Alger has in regard to Fisher, beyond noting that Smiths conveyed to Alger whatever rights they had.