Argued and submitted May 8, affirmed on appeal; reversed and remanded with
instructions on cross-appeal December 13, 1995, petition for review allowed
February 20, 1996 (322 Or 612)
See later issue Oregon Reports

Barbara ANDERSON;
John R. Gilbert; Thomas K. Hatfield;
Margaret S. Ivers; Ellen Leigh;
Meadows Land Partnership;
Diane L. Nikkila; Ruth Seibel; Joyce Wineberg;
Judy Delong, as Trustee for the Estate of
Sella Hatfield; and First Independent Bank,
as Trustee for the Estate of William L. Seibel,
*Appellants - Cross-Respondents,*

*v.*

JENSEN RACING, INC.,
(formerly known as Jensen Racing Corporation),
an Oregon corporation;
Donna Jensen,
*Respondents,*
*and*

THE NEW PORTLAND MEADOWS, INC.,
an Oregon corporation,
*Respondent - Cross-Appellant.*

(9203-01970; CA A81853)

908 P2d 339

John Paul Graff argued the cause for appellants - cross-respondents. With him on the briefs was Graff & O'Neil.

John R. Faust, Jr., argued the cause for respondents. With him on the brief were Mark LeCoq and Schwabe, Williamson & Wyatt.

William H. Walters argued the cause for respondent - cross- appellant. With him on the briefs was Miller, Nash, Wiener, Hager & Carlsen.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Plaintiffs and defendant Donna Jensen (Jensen) are among the owners of Portland Meadows Race Track.[1] Jensen is a principal of Jensen Racing, Inc. (JRI), a corporation that plaintiffs engaged as the lessee-operator of the track. In 1984, plaintiffs and JRI entered into the present incarnation of the parties' operating agreement. JRI remained the operator until 1989 and, after an intervening operator's bankruptcy, JRI assigned its interest in the agreement to New Portland Meadows, Inc. (NPM). Disputes arose, and plaintiffs brought this action against Jensen, JRI and NPM for breach of contract, an accounting and declaratory relief.

The legal disagreements among the parties center on paragraphs 5 and 14 of the 1984 agreement, which provide, respectively:

"5. *Use Fee.* Operator shall pay to Owners, or their designated agent, each week of the regular racing season for the race meet conducted during that year, a fee for the use of the Race Track Facilities equal to one percent (1%) of the gross parimutuel wagering at the race track. This fee shall be paid weekly on a day to be selected by the parties.

"* * * * *

"14. *Use of Race Track Facilities for Special Purposes.* Operator shall have the right to use the Race Track Facilities for special purposes other than conducting horse or animal racing ('Special Purpose'). In such Special Purpose situations, however, the revenues, fees or income ('Special Income'), if any, received by Operator from such activities or events shall be subject to payment of a Special Purpose fee by Operator to Owners, which shall be determined as follows:

"14.1. *Horse Related Activities by Anyone.* Operator shall pay to Owners a Special Purpose fee equal to one percent (1%) of the gross Special Income, but not including revenues from concessions, received by Operator for any Special Purpose use of the Race Track Facilities by anyone, including Operator, for all Special Purpose uses that are in anyway 'horse related' (e.g., horse shows, horse sales, etc.).

---

[1] Jensen is related to or was the friend of several of plaintiffs. That fact assumes significance to some of the issues that we will discuss and is important to note at the outset to convey a full understanding of the circumstances.

"14.2. *Non-Horse-Related Activities by Anyone*. Operator shall pay to Owners a Special Purpose fee equal to five percent (5%) of all the gross Special Income up to $800,000 and three percent (3%) of all the gross Special Income above $800,000, including revenues from concessions, received by Operator for any Special Purpose activities, other than horse-related activities as provided in paragraph 14.1, that are conducted by Operator or any other person on the Race Track Facilities.

"14.3. *Payment of Special Purpose Fees*. All Special Purpose Fees shall be paid with[in] thirty (30) days following the receipt by Operator of the Special Income from the Special Purpose event."

The parties' disagreements were myriad in number and form, but we will describe only those that are involved in the appeal and that will require discussion. Although "off-track betting" on events conducted at the track did not become permissible and operational until 1989, plaintiffs contended that wagering of that kind, as well as bets made at the track itself, was subject to paragraph 5. Defendants disagreed. The trial court, to which the case was tried and which made detailed oral findings, concluded that paragraph 5 unambiguously provided that the one-percent fee applies only to bets made at the track.

Plaintiffs next argued that, at a May 1989 meeting, Jensen, as JRI's principal, and plaintiffs, orally modified paragraph 5 to cover off-track betting.[2] Jensen and JRI had paid plaintiffs one percent of the proceeds of off-track betting during the 1989 race season; the court found that, although Jensen "acquiesced" in those payments "to keep peace in the family," she did not agree to any contractual modification. The court also concluded that there was no estoppel principle that benefitted plaintiffs and gave rise to an enforceable agreement along the lines of the purported modification.

The next disagreement concerned wagers made at the track on off-track racing events that were "simulcast" to audiences at the track. Plaintiffs argued that their share of those amounts was to be calculated under paragraph 5, while defendants asserted that the lesser amounts authorized

---

[2] Plaintiffs' alternative argument that the agreement was modified by conduct is among those that do not warrant discussion.

under paragraph 14 were applicable. The trial court agreed with plaintiffs.

Plaintiffs also contended that they were entitled to payments under paragraph 14 for a variety of other events, including lottery activities and concerts, that were produced in conjunction with racing programs. The trial court concluded that the matters in question were "ancillary" to and "promotional" of the racing activities themselves and were outside the scope of paragraph 14.

The trial court granted plaintiffs' claim for an accounting to determine if and what additional amounts defendants owed them. Of the other matters that were disputed, it suffices to say that plaintiffs' positions did not succeed. The court entered a judgment, declaring the respective rights of the parties in accordance with its rulings, awarding plaintiffs and Jensen damages for the ascertainable amounts due, and ordering the accounting to proceed. Because the accounting was not complete and the claim for it was not disposed of, the judgment as to the other claims was made final pursuant to ORCP 67 B. Finally, the court concluded that neither side had prevailed, and it rejected the parties' respective claims for attorney fees under the contractual provision making them payable to a prevailing party.

Plaintiffs appeal and NPM cross-appeals. Plaintiffs present eight assignments of error. The first challenges the denial of their claim for attorney fees. The others challenge various rulings and adverse substantive determinations by the trial court. NPM assigns error only to the trial court's conclusion that paragraph 5, rather than paragraph 14, was the applicable provision for purposes of calculating the amounts that the operator owes plaintiffs in connection with wagers at the track on races that are simulcast from other locations. Because the resolution of the cross-appeal as well as the appeal could have bearing on the attorney fee issue, we will decide the other issues in the appeal and the issue presented by the cross-appeal before addressing plaintiffs' assignment relating to attorney fees. We affirm on the appeal, reverse on the cross-appeal and hold that the issue of attorney fees is not ripe for decision.

In their second, third and fourth assignments, plaintiffs contend that the trial judge erred in admitting certain evidence, which plaintiffs maintain is hearsay, and then, in making his findings, considering the evidence for purposes other than the "nonhearsay matters" to which he had ostensibly limited it. The evidence was relevant to show the state of mind of the parties to the 1984 agreement and its predecessors — specifically by demonstrating that there was a general awareness of off-track betting in the industry at the times the contracts were formed. The apparent point of plaintiffs' argument is that the trial court went beyond the use of the evidence for that purpose. They maintain that the court took the general knowledge of off-track betting into account and concluded that, because the known phenomenon was not mentioned in paragraph 5, the parties did not intend for paragraph 5 to apply to off-track betting.

Defendants answer, *inter alia*, that, even if the evidence was improperly admitted and used, the court also determined that paragraph 5 was unambiguous and that it applied only to the proceeds of "wagering at the race track." Defendants note that plaintiffs did not assign error to that conclusion and hence, they argue, plaintiffs cannot complain about the admission or use of the extrinsic evidence because the construction of the agreement was independently determinative of the issue. We agree with the trial court that paragraph 5 is unambiguous and that it does not apply to off-track betting. Moreover, although that conclusion *is* independently determinative of the issue, we do not agree that the state of mind evidence was hearsay or was improperly received or that there is any basis for concluding that the trial court considered it for any impermissible purpose.

Plaintiffs assert in their fifth assignment of error that the court erred by finding that Jensen and, through her, JRI did not orally agree to modify paragraph 5. Plaintiffs contend that there was no evidence to support that finding. However, their argument focuses only on the evidence favoring a contrary finding, and it draws all inferences from the evidence that are favorable to their position. Viewing the evidence and the inferences in the opposite way, as we are required to do in reviewing a finding in this action at law, Jensen's testimony supports the finding that she did not

agree to a modification and that the amounts that she "acquiesced" to pay in 1989 were, as she testified, not made "in accordance with the agreement."

■　　　Plaintiffs' sixth assignment attacks an alternative basis for the same finding and is rendered academic by our disposition of the preceding assignment. Plaintiffs argue in their eighth assignment of error that the trial court erred in concluding that paragraph 14 does not apply to the lottery and concert activities, which it described as "ancillary" to and promotional of the racing events and likened to parking facilities and concessions. Given those findings, which the evidence supports, we agree with the trial court's conclusion on that point. Plaintiffs' remaining assignment of error does not require discussion.

■■　　We now turn to the cross-appeal. NPM contends that the court erred in concluding that the wagers on the off-track simulcasts come within paragraph 5, which the court reasoned governs the "payment of the one percent of gross parimutu[e]l wagering *at the racetrack.*" (Emphasis supplied.) NPM argues that, contrary to the trial court's reading, the phrase in paragraph 5, "the regular racing season for the race meet conducted during that year" refers to the racing season at the track itself and does not apply to races at other facilities. NPM also contends that paragraph 14 governs the fees the operator is to pay the owners for the former's use of the track facilities "for special purposes," which include activities "other than conducting [the] horse or animal racing" to which paragraph 5 applies. We agree with NPM that the simulcasts from other locations do not constitute "*conducting* horse or animal racing," and that they are special purpose activities subject to the payment requirements of paragraph 14. We therefore conclude that the trial court was incorrect in determining that paragraph 5, instead of paragraph 14, was the applicable provision.

We now return to plaintiffs' first assignment of error. Technically, the attorney fee issue is premature. Our remand on the cross-appeal will affect the amount of damages, and the proceedings on the accounting claim may also have that effect. However, there is no question that, ultimately, the *monetary* relief in the case can only run from defendants to plaintiffs and, in some measure, to Jensen.

Because the issue is likely to arise on remand, we will address it.

■ According to the parties, and insofar as the available record permits us to discern, the trial court concluded that there was no "prevailing party" for purposes of the contractual attorney fee provision, because both sides had succeeded — and failed — on some of the many claims and issues. We summarized the relevant principles and authority on problems of this general kind in *Meduri Farms, Inc. v. Robert Jahn Corp.*, 120 Or App 40, 44, 852 P2d 257 (1993):

> "There can be only one prevailing party for the purpose of an award of attorney fees, although both sides may prevail on some claims or counterclaims. *Marquam Investment Corp. v. Myers*, 35 Or App 23, 31, 581 P2d 545, *rev den* 284 Or 341 (1978). When both sides seek monetary damages by way of claim and counterclaim, and both claims prevail, the prevailing party is the party who receives the net award. *Allen & Gibbons Logging v. Ball*, 91 Or App 624, 632, 756 P2d 669 (1988); *Pelett v. Welch*, 71 Or App 761, 763, 694 P2d 574 (1985). When one party seeks nonmonetary relief and the other party seeks damages, to determine who is the prevailing party, courts weigh 'what was sought by each party against the result obtained * * *.' *Lawrence v. Peel*, 45 Or App 233, 243, 607 P2d 1386 (1980); *see also Ladum v. City of Reedsport*, 83 Or App 666, 669, 733 P2d 66 (1987)."

Although that statement focuses on situations where both of the opposing parties seek some relief, the same principles apply when only one party seeks relief, the other simply opposes it, and the results are mixed. *Ladum*.

Defendants rely on *Ladum* and *Lawrence*, and assert that this is a situation where plaintiffs prevailed on only two of the many matters on which they sought relief, and therefore "the result obtained" does not weigh impressively enough against "what was sought" for plaintiffs to be the prevailing parties.

Plaintiffs incorrectly understand the *principle* stated in *Ladum* and *Lawrence* and quoted in *Meduri Farms, Inc.* as applying only when one party prevails on all contested issues. Plaintiffs assert that, to resolve the question here, we "must turn to basics" and apply the net award test of *Pelett* in determining which parties prevail. Because plaintiffs alone

won monetary damages, they conclude that *ipso facto* they prevail.

■ We *might* agree with plaintiffs that the net award test rather than the *Ladum-Lawrence* principle would apply if this were a situation where the plaintiffs had sought *only* monetary relief, and had succeeded on some but not all of their specifications. However, this is not such a situation. Plaintiffs brought this action, and chose to pursue declaratory as well as monetary relief. The declarations that they sought were not, in all instances, simply reiterations of the bases that they advanced for damages. For example, the declarations that they unsuccessfully tried to obtain included one that defendants were in default for failing to provide insurance and a second that plaintiffs, as the other owners, are entitled to pursue all contractual remedies for the default "whether or not they obtain the consent of defendant Donna Jensen."

We do not know how much, if any, additional relief plaintiffs may obtain in the further trial court proceedings. If the judgment in its present posture were a final one and not reversible for other reasons, we would find no error in the trial court's denial of attorney fees to plaintiffs. As of now, they have lost more than they have won.

Affirmed on appeal; on cross-appeal, reversed and remanded with instructions to amend judgment not inconsistently with this opinion as to fees for simulcast races broadcast into the race track from other facilities.