431

Argued and submitted April 26, affirmed December 1, 1982

MARKWART,
*Respondent,*
*v.*
FRY et al,
*Appellants.*

(No. 79-3-356, CA A22183)

653 P2d 1307

Larry I. Voth, Portland, argued the cause for appellants. With him on the briefs was Phillip R. Muir, Portland.

Robert G. Hawkins, Gresham, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

**RICHARDSON, P. J.**

Plaintiff, a building contractor, brought this action for the balance due on a contract to construct a house on defendants' property. Defendants counterclaimed for damages resulting from deficiencies in plaintiff's work and for punitive damages. The case was tried to the court sitting without a jury. The court awarded plaintiff $9,825 as the balance due under the contract and awarded defendants damages of $9,472, leaving a net judgment of $353 in favor of plaintiff. Defendants appeal, and we affirm.

Defendants owned a lot in Portland on which they desired to build a house. They contacted plaintiff, a licensed contractor, who was building a house in the neighborhood. They acquired a house plan from a designer suggested by plaintiff and submitted the plan to plaintiff for a bid. After a period of negotiation, they accepted one of plaintiff's bids, and the parties signed a construction contract. Pursuant to the contract, plaintiff was to provide materials and labor for all concrete framing, roofing, plumbing, electrical work, finish grading of the yard and exterior siding, with complete performance by March 1, 1978. Defendants agreed to do their own subcontracting for the sheetrock, interior walls, interior and exterior painting, floor covering, light fixtures, interior cabinets and gutters and downspouts. Defendants were obligated to make progress payments on a set schedule, with the final payment of $11,000 due on completion. There was no provision in the contract for modification of the agreement or the house plan. As construction progressed, however, the parties made at least 26 modifications of the plans.

Construction was delayed, in large part because of problems with plaintiff's subcontractors. There was some delay because of changes requested by defendants. As a result, plaintiff's obligations under the contract were not completed by March 1, 1978. Plaintiff last worked on the house on April 21, 1978, and on June 15, 1978, defendants terminated the contract and undertook completion, including the work they were responsible to perform. At that time defendants had made all progress payments except the final one of $11,000, which they refused to make, claiming plaintiff had not adequately performed under the contract.

The court issued written findings of fact and conclusions, to which defendants filed objections. The court made some corrections but rejected most of defendants' contentions. The findings of fact and conclusions were incorporated in the judgment.

Defendants' first claim of error concerns damages for correction of defects in the roof. The house plan called for a composition roof, but the parties agreed in the written contract that a tile roof would be installed. Defendants claimed that plaintiff had not installed roof trusses with sufficient strength to support a tile roof as required by the building code and had altered the roofline without their permission. They claimed that the altered roofline was unattractive and was a design they had specifically rejected during earlier negotiations. The court concluded that plaintiff had altered the roofline without permission and had not constructed it in compliance with the building code.

The court found that it would cost $3,000 to remove the tile and rebuild the roof to comply with the building code provisions. It then stated in its findings that it would cost an additional $2,600 to rebuild the roofline to comply with the original plans. Defendants argue that the court erred in awarding only $5,600 total damages for reconstruction of the roof, because the uncontradicted evidence was that it would cost $5,600, in addition to the $3,000 needed to bring the roof into compliance with the building code. Defendants recognize that the court as the trier of fact need not accept even uncontradicted expert opinion. They submit, however, that the trial court obviously misunderstood the evidence in calculating the roof related damages. They argue that that error, which they assert is apparent on the face of the record, should be corrected on appeal. The same argument was also advanced by defendants in their objections to the findings of fact and conclusions. The trial court, by declining to alter its findings and conclusions, obviously did not agree that it had misunderstood the evidence. The findings of the trial court have the same effect as a jury verdict, and our review is limited to determining if there is evidence to support the findings. The court was free to determine from the evidence

what the appropriate amount would be. We will not disturb that finding.

■ Defendants next assign as error the court's failure to award damages for replacement of the exterior siding installed by plaintiff. They claim the exterior siding was not of premium grade. They presented evidence that it would cost $4,800 to replace the siding. The court found:

"The plans called for external cedar siding 1 X 8 in size, to be applied horizontally. Defendants requested vertical siding, channel-type, and plaintiff complied with this request. Some of said external siding had knots and other defects and all of it did not appear to be of a premium grade. However, the evidence did not substantiate replacing all of the external siding for the sum of $4,800."

The court did not award any damages for the siding. Defendants argue that the court found the siding was defective and that even though damages may not be exactly calculable it should have awarded some damages, even a nominal amount. We do not interpret the court's statement as a finding that the siding was defective to the point that it should be replaced. The court simply concluded by its judgment that no damages were justified. Although an award of damages would have been supported by the evidence if the court had so decided, the decision not to award damages based on the evidence is also within the court's power as the trier of fact.

■ Defendants' third assignment is that the court erred in striking their claim for punitive damages after they had presented their evidence on the counterclaim. After setting forth specific defects in plaintiff's performance that they claimed were the result of negligence, defendants alleged

"[p]laintiff, in the performance of his work for the Defendants, acted in a wanton and reckless disregard for Defendants' rights, and Plaintiff should be assesed $20,000.00 punitive damages."

They argue that the evidence shows that plaintiff wilfully and intentionally changed the roofline without their approval. They also claim that when plaintiff was notified that the roof construction was in violation of the city building code, he falsely represented to the building inspector that the required trusses had been installed. That

representation was made one week before trial. They argue that the intentional alteration of the plans and the misrepresentation to the city building department constituted conduct that justifies punitive damages. In striking punitive damages, the court stated that plaintiff's conduct was no' worse than negligent.

■ We agree with the court's characterization of the evidence. Plaintiff altered the roofline contrary to the agreed plans without obtaining defendants' consent. That was a violation of his contractual duty, and may have been negligent performance, but it is not sufficient to justify punitive damages. The second basis for punitive damages advanced by defendants concerned plaintiff's conduct after the contractual relationship had been terminated and after the complaint and counterclaim had been filed. That conduct is not a basis for awarding punitive damages respecting plaintiff's performance under the contract. The court did not err in striking the punitive damages claim.

Defendants next argue that the court erred in striking their claim for damages resulting from the delay in completion of the house. The contract required plaintiff to complete his work by March 1, 1978. When defendants terminated the contract on June 15, 1978, plaintiff had not entirely completed the work required by the contract. Defendants sought damages equal to the amount of interest obtainable on the $40,000 they had invested in the project at that point.

■ ■ The court struck the claim for delay damages because the factual basis was speculative. Defendants argue that they presented evidence of the amount invested and the appropriate rate of interest and that the damages were thus not speculative. Interest on the investment of the property owner is an appropriate measure of damages for the unexcused delay of a contractor in completing the contract. *Stubblefield v. Montgomery Ward & Co.,* 163 Or 432, 447-48, 96 P2d 774, 98 P2d 14 (1939). However, if the evidence discloses more than one possible cause of the delay, the property owner has the burden to establish with reasonable certainty the period of unexcused delay attributable to the contractor. *See Parker v. Harris Pine Mills, Inc.,* 206 Or 187, 291 P2d 709 (1955); *Valley Inland*

*Pac. Constructors v. Clackamas Water Dist.,* 43 Or App 527, 603 P2d 1381 (1979). The evidence was in conflict as to the causes of the total delay from March 1 to June 15, 1978. Part of the delay was in the area of plaintiff's responsibility and part in the area of defendants' responsibilities. Defendants did not segregate the various causes. The court did not err in striking that claim for damages.

■ ■    In their final assignment, defendants assert that the court was wrong in its conclusion that plaintiff substantially completed his performance of the contract. A builder who has supplied labor and materials under a contract and is prevented from fully performing by the owner's termination may seek the reasonable value of what the owner received or the balance due on the contract. *Paul & Backer Co. v. Newman,* 252 Or 66, 448 P2d 511 (1968). In seeking the balances due on the contract, plaintiff must show that he has substantially completed the contract up to the time it was terminated. That is a question of fact. *Turner v. Jackson,* 139 Or 539, 4 P2d 925, 11 P2d 1048 (1932). Defendants contend that, because the trial court found that plaintiff had breached the contract by altering the roofline without permission and by not constructing the house in a workmanlike manner, as a matter of law he had not substantially performed the contract. We disagree. The trier of fact is entitled to determine from the evidence whether the defective performance by a contractor is sufficient to establish that he has not substantially performed. The court found substantial performance and allowed the costs of curing the defects to be offset against plaintiff's recovery.

Affirmed.