Argued and submitted October 26, 2011, affirmed March 27, 2013

Bobb FOSTVEIT,
dba Bobb Fostveit Construction,
*Plaintiff-Respondent*,

*v.*

James Edward POPLIN,
Debra Lynn Poplin,
Cliff J. Johnson,
and Retta D. Johnson,
*Defendants-Appellants.*

James Edward POPLIN
and Debra Lynn Poplin,
*Third-Party Plaintiffs*,

*v.*

CASCADE DESIGN GROUP, INC.,
*Third-Party Defendant.*

Lincoln County Circuit Court
073690; A145352

301 P3d 915

George W. Kelly argued the cause and filed the briefs for appellants.

Robert A. Ford argued the cause for respondent. With him on the brief was Kurtz, Ford & Johnson, LLP.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

This appeal arises out of a dispute between the owners of a self-storage facility and the general contractor they hired to construct additional storage units on their property. Defendants James and Debra Poplin appeal from a judgment awarding plaintiff Fostveit damages on his claims for foreclosure of a construction lien and breach of contract.[1] Defendants also appeal a supplemental judgment awarding attorney fees to plaintiff. On appeal, defendants contend that the trial court committed legal error by shifting the burden of proof to defendants on the issue of whether plaintiff substantially performed under the contract. As to the attorney fees award, defendants maintain that because the underlying judgment must be reversed, so must the supplemental judgment awarding fees. We affirm, concluding that the trial court did not commit legal error and that the court's factual findings are supported by evidence in the record.

We state the facts in the light most favorable to plaintiff, who prevailed at trial. *Fowler v. Cooley*, 239 Or App 338, 340, 245 P3d 155 (2010). Defendants, who own a self-storage facility in Lincoln County, hired plaintiff, a general contractor, to construct additional storage units at the facility in the same construction style as the existing units. The parties executed a contract that provided for the construction of two one-story buildings and one two-story building that would contain a total of 35 additional storage units. The terms of the contract provided a per-unit price that varied depending on the size of the unit and a 12 percent "overhead fee" on the total cost of the contract. The contract also provided that costs for excavation, pavement, gates, and a retaining wall would be determined at a later date. In addition, the contract contained a clause that "[a]ll work shall be completed in a workmanship like manner and in compliance with all codes and other applicable laws." To reduce the total cost to defendants, the parties agreed that

---

[1] Plaintiff also named Cliff and Retta Johnson as defendants in his complaint. The Johnsons held a deed of trust on the Poplins' property. Nevertheless, throughout this opinion, for convenience, the term "defendants" refers to the Poplins. In addition, the Poplins filed a third-party claim against Cascade Design Group, Inc., but that claim is not subject to this appeal and Cascade Design Group is not a party to this appeal.

defendants would be responsible for installing the metal roofing, siding, insulation, and wall partitions and for paving the area surrounding the buildings.[2]

Lincoln County later issued a building permit, and plaintiff hired subcontractors for excavation, concrete work, electrical work, and engineering of the retaining wall. The retaining wall, as designed by a subcontractor, provided for a cantilevered wall that reached eight feet at its highest point and abutted the construction of the two-story building. In construction of the two-story building, plaintiff built the "flooring system" for the second floor on top of the retaining wall and, because the wall was not tall enough, backfilled gravel and dirt against approximately 18 vertical inches of untreated lumber that plaintiff used as part of the flooring system. Defendants later installed the roofing and siding materials and altered the grade of the gravel driveway that abutted the two-story building. Defendants did not install gutters as part of the roofing system.

About seven months after the building permit was issued, Lincoln County issued a certificate of occupancy and conducted final inspections of the buildings. Around that time, a dispute arose between plaintiff and defendants over the 12 percent "overhead fee," and defendants refused to pay plaintiff's final invoice of $76,097.20. Around the same time, defendants discovered that there was water intrusion into the two-story building, which compromised some of the newly constructed storage units. Defendants' attorney sent plaintiff a letter instructing him to stop work on the site. Plaintiff testified that he was unaware of the water intrusion until after he received direction to stop work, but defendants dispute plaintiff's testimony, contending that the parties had discussed the need to fix the thresholds before plaintiff was directed to stop work. Less than two months later, plaintiff recorded a construction lien for the unpaid balance due under the contract.

One month after recording the construction lien, plaintiff filed an action against defendants for foreclosure of

---

[2] Defendants' agreement to perform some of the construction was the subject of a separate oral agreement between the parties that is not at issue on appeal.

the construction lien and breach of contract. Both claims were based on the same basic theory: that plaintiff performed all conditions imposed by the contract and defendants failed to pay the full amount due. Defendants filed an answer generally denying plaintiff's claims, raising affirmative defenses and counterclaims against plaintiff, and a third-party complaint against the designer of the retaining wall. As an affirmative defense to both of plaintiff's claims, defendants asserted that plaintiff failed to perform his obligations under the contract, including his refusal to finish the job and his failure to perform his work in a "workmanship like" manner. Defendants also asserted a breach-of-contract counterclaim against plaintiff, seeking $275,000 in damages related to plaintiff's construction of the storage units.

We pause here to provide a general overview of the law that applies to construction cases such as this, because an understanding of the legal framework helps to frame the arguments and evidence presented by the parties at trial and illuminates our analysis on appeal. In general, "[a] construction lien may not be had by one who has failed to substantially perform his part of a contract." *Welch v. Webb*, 47 Or App 771, 775, 615 P2d 391 (1980). Similarly, "a party to a contract who complains that the other party has breached the terms of a contract must prove performance of the contract on his own part, or a valid tender of performance rejected by the other party." *Huzar v. Certified Realty Co.*, 266 Or 614, 620, 512 P2d 982 (1973). "Substantial performance is accomplished although the contract is not completely performed if the omissions and deviations from the performance required by the contract are inadvertent and unintentional, do not impair the structure as a whole, can be easily remedied, and may be paid for by deductions from the contract price." *Mathis v. Thunderbird Village, Inc.*, 236 Or 425, 438-39, 389 P2d 343 (1964); *see also Edmunds v. Welling*, 57 Or 103, 109, 110 P 533 (1910) (concluding that a contractor who had substantially completed the work was entitled to recover the contract price, "less such amount as will compensate * * * for the defects and omissions"). "Whether there has been substantial performance is a question of fact." *American Petrofina v. D & L Oil Supply*, 283 Or 183, 195, 583 P2d 521 (1978).

Accordingly, when the case was tried before the trial court without a jury, the parties focused in large part on the quality of plaintiff's construction. Plaintiff contended that he substantially performed under the contract, while defendants argued that plaintiff's construction was substandard, meaning that he could not recover on the lien or for breach of contract, and that defendants were entitled to prevail on their counterclaim for breach of contract. The parties presented conflicting evidence and expert testimony regarding construction of the storage units and the cause of the water intrusion into the two-story building. As explained in more detail below, 255 Or App at 757, the parties' evidence fell into five general categories of possible sources of water intrusion: (1) plaintiff's faulty installation of "thresholds,"[3] (2) plaintiff's faulty installation and "damp proofing"[4] of the concrete foundation, (3) plaintiff's failure to install a filter membrane around a perforated drain pipe at the base of the two-story building, (4) defendants' faulty installation of the roof and siding and their failure to install gutters, and (5) defendants' post-construction change of the driveway grade to slope toward the two-story building. Defendants also complained that plaintiff's use of untreated lumber in the flooring system of the two-story building violated the building code and required repair.

At trial, plaintiff elicited expert testimony from building inspectors, building code officials, and contractors that he performed his contractual duties in a workmanlike manner—focusing on the areas of construction identified by defendants as substandard. Defendants countered that evidence with expert testimony of their own.

After trial, the court entered extensive findings of fact and conclusions of law, ultimately ruling in plaintiff's favor on both of his claims and determining that plaintiff substantially performed under the contract and that the defects in plaintiff's workmanship could easily be remedied and paid for by deductions in the contract price.

---

[3] A threshold is the "plank, stone, or piece of timber or metal that lies under a door." *Webster's Third New Int'l Dictionary* 2383 (unabridged ed 2002).

[4] According to the parties, "damp proofing" is the application of material to concrete to prevent moisture from "traveling" through the concrete.

The court recounted in detail the evidence and testimony presented by the parties about plaintiff's workmanship and the possible causes of water intrusion. As to the causes of water intrusion potentially attributable to plaintiff, the court noted that plaintiff conceded that the thresholds were improperly installed and needed repair. In addition, the court found that plaintiff's failure to install a filter membrane around the perforated drain pipe at the base of the two-story building was a violation of the building code; nevertheless, the court concluded that the evidence established that a filter membrane was not a "critical feature of [the] drainage system" and that there was no evidence that the lack of the membrane contributed to the water intrusion. Similarly, the court concluded that plaintiff's use of untreated lumber to build the flooring system in the two-story building violated the building code and necessitated repairs, but that it did not contribute to the water intrusion.

Nevertheless, the court also determined that the construction performed by defendants, particularly the installation of the roof and siding, resulted in water intrusion into the units. The court also opined that expert testimony supported a finding that defendants' alteration of the grade of the driveway directed water into the units and contributed to water intrusion, and that a lack of gutters on the building also could have contributed to the water problems. Because the court concluded that defendants' work contributed to, and was just as likely a cause of, the water intrusion, the court noted that it was unclear from the evidence if plaintiff's damp proofing contributed to the water problem. The court ultimately stated that, based on its other findings, there was no evidence or testimony from which the court could conclude that a "better" application of damp proofing would have prevented water intrusion.

Based on its findings of fact, and in spite of the identified deficiencies in plaintiff's work (*i.e.*, the thresholds, filter membrane, and flooring system), the court determined that plaintiff substantially performed under the contract, and that he was entitled to foreclose his construction lien and prevail on his breach-of-contract claim. In so concluding, however, the court reduced plaintiff's recovery to account

for the identified deficiencies. The court credited defendants with $1,160 to cover repairs to the thresholds and $5,000 to replace the untreated lumber in the flooring system of the two-story building.[5]

Defendants appeal from the subsequent judgment and a supplemental judgment awarding attorney fees. On appeal, defendants contend that the trial court committed legal error by impermissibly shifting the burden of proof[6] to defendants on the issue of plaintiff's performance under the contract. The most cogent explanation of defendants' argument on appeal appears in their reply brief:

"Defendants' assignment [of error] is less about the legal sufficiency of the evidence and more about a misapplication of the law and the burden of proof. The analysis set out in plaintiff's opening brief was this: (1) plaintiff admitted, and the trial court found, that a portion of plaintiff's work was not to code and/or not workmanlike (e.g., the defective thresholds); (2) the trial court found that, separate from the above problem, there was additional leaking whose cause could not be determined (i.e., the leaking could have been caused by either party); (3) the trial court ruled that defendants had the burden of proving that plaintiff was responsible for the additional leaking; (4) because defendants had not met this supposed burden, the court treated all of the additional leaking as if caused by defendants; (5) in fact, the burden of proof was on plaintiff, and because he failed to prove that he was not the cause of the additional leaking, he also failed to prove that he had completed performance of his contractual duties; and (6) because plaintiff failed to prove his performance, the only judgment possible, as a matter of law, is a judgment in favor of defendants."

We reject defendants' assignment of error. First and foremost, defendants' argument relies on the premise that the trial court found that, separate from the leaking thresholds, there was additional water intrusion the cause of

[5] The court also concluded that $12,545.47 was not recoverable on foreclosure of the lien because $7,265.19 was for materials that were subject to a separate lien by a lumber yard, and $5,280.28 charged by plaintiff for electrical costs was covered by the per-unit price in the contract.

[6] See State v. James, 339 Or 476, 484, 123 P3d 251 (2005) (noting that "burden of proof" is an inexact phrase, which combines the distinct concepts of "burden of persuasion" and "burden of production"); see also OEC 305 (allocation of the burden of persuasion), and OEC 307 (allocation of the burden of producing evidence).

which could not be determined. Defendants argue from that premise that the court "treated all of the additional leaking as if caused by defendants" when it should have concluded that plaintiff failed to prove that he was not the cause of the additional leaking, and therefore did not perform under the contract. We conclude that defendants' basic premise is faulty and that, as a result, their argument fails.

As is evident in our recitation of the trial court's findings—giving plaintiff the benefit of every reasonable inference and presuming that in the absence of explicit findings, the trial court decided the facts in a manner consistent with its ultimate conclusion—the trial court found that the water intrusion was attributable to defendants' work. In this case, despite some imprecise language in the trial court's written findings and conclusions, when considered as a whole, the trial court's findings reveal that the court found that defendants' installation of the roof and siding was deficient and led to water intrusion. Further, the court accepted testimony that defendants' change of the driveway grade directed water into the compromised storage units. In explaining its conclusion that plaintiff did not breach the contract, the court stated that "what complicates the court's analysis is the fact that certain sources of water intrusion are portions of construction that were not provided for in the contract, for example, the installation of the siding and roofing." Accordingly, we disagree that the court found that the cause of the additional leaking could not be determined; rather, the court weighed the evidence and decided that defendants' actions contributed to the water intrusion.

In the end, therefore, the trial court found that there were multiple potential sources of water intrusion, including the thresholds, the damp proofing, the change in grade to the driveway, and the roofing and siding installation. The court, however, limited its evaluation of plaintiff's performance to those duties assigned to plaintiff under the contract. It determined that, particularly in light of the problems caused by defendants, plaintiff substantially performed its portion of the work because the thresholds could be easily fixed, the lack of a filter membrane on the perforated drain pipe did not compromise the function of the drain, and the

court could not determine that better damp proofing would have prevented water intrusion. The trial court's findings of fact are reviewed for any evidence, and there is evidence in the record to support those findings in this case. *See Hawkins v. Teeples and Thatcher*, 267 Or 151, 157, 515 P2d 927 (1973) ("[A] general finding of fact by a trial judge * * * is the equivalent of a jury verdict and cannot be set aside * * * when supported by any substantial evidence.").

Therefore, the trial court's findings and conclusions reveal that plaintiff put forth *prima facie* evidence, mostly in the form of expert testimony, that he substantially performed his duties under the contract. The trial court weighed plaintiff's evidence against defendants' contradictory evidence and concluded that plaintiff substantially performed. That determination is supported by evidence in the record. To the extent that the trial court's findings and conclusions include statements that may contradict its determination that plaintiff substantially performed, we understand those statements to refer to defendants' counterclaim for breach of contract. Accordingly, the trial court did not err.

Affirmed.