DeVORE, J.
*253 This appeal arises from a conflict between a homeowner and a contractor regarding a roof project. Defendant, the homeowner, appeals from a general judgment awarding the contractor, Cedartech, Inc., $7,045 on its contract claim for nonpayment, less a setoff for defendant of $1,200. Defendant raises four assignments of error relating to plaintiff's claim, defendant's setoff, and an evidentiary ruling. Cedartech cross-appeals from a supplemental judgment that denied an award of attorney fees and denied an arbitrator's fee as an item of costs. We affirm the general judgment. We reverse and remand the supplemental judgment as to attorney fees but affirm as to costs.
I. FACTS
The introductory facts are undisputed. We recount disputed facts later when discussing the assignments of error. Defendant owns a historic home that has a cedar shingle roof. Defendant contacted Cedartech to have the roof cleaned and to check two spots for leaks. On October 6, 2014, the parties entered into a written contract. Using checked boxes in a left column, the contract provided that Cedartech will
"Clean roof of debris, leaves and needles, prior to spraying.
"Apply Cedarsilver to entire roof area.
"Clean gutters.
"Clean skylights.
"Other."
Alongside "Other," a handwritten note adds, "Has leaks in (2) spots [check] to see if something obvious!" In a right column, other handwritten notes add:
"Clean flat roofs (metal)
"May need additional repairs after cleaning
"Some ladder work *964 "Shingle steep pitch ridge cap
"2-3 rc on cottage
"Cottage included!"
*254 The contract concluded with a provision that, in the event of suit or action, the prevailing party shall be entitled to recover its reasonable attorney fees.
On October 29, 2014, Cedartech began work and returned on six other days to work. Midway through the project, the parties agreed in a conversation that Cedartech would install two bundles of shingles at a cost of $800 in an effort to repair the two leaks. On December 2, 2014, Cedartech installed the shingles and sent an invoice to defendant with charges of $3,445 for roof cleaning and treatment, $2,800 for other labor, and $800 for the leak repairs.
The parties were displeased with each other's performance. Defendant asserted that Cedartech's work was flawed and that she would not pay the bill. After several unsuccessful requests for payment, Cedartech sued defendant for breach of contract for nonpayment and sought attorney fees. Among other things, Cedartech alleged that it completed the agreed roof work and that defendant had failed to pay $7,045. Defendant responded, and, with several affirmative defenses, alleged that Cedartech materially breached the contract by, among other things, failing to repair the leaks and failing to perform work in a work-manlike manner. Defendant also pleaded setoff and a claim of negligence. She asserted that, as a result of Cedartech's breaches, Cedartech had no right to recover and that she was entitled to a setoff of $18,000 for substitute performance costs that she incurred to repair damage caused by Cedartech's breaches.
The case proceeded in court-annexed arbitration. The arbitrator concluded that defendant owed Cedartech $6,645, but the arbitrator awaited filing the award with the court until the parties submitted a cost bill and attorney fee petition. The court's arbitration deadline passed without entry of an arbitrator's award, and the trial court, on its own motion, entered an order removing the matter from arbitration.
The case proceeded to a bench trial. The parties agreed that they had entered into a contract for Cedartech to provide maintenance services to defendant and that defendant had agreed to pay "upon completion." The parties *255 also agreed that Cedartech had provided maintenance services and that defendant had not paid for those services. Defendant contended that she was relieved of her payment obligation because Cedartech first breached their contract by failing to complete the project and by failing to provide services that met industry standards.
In a letter opinion, the trial court concluded that a "preponderance of the evidence proved that Cedartech completed the material terms of the parties' written contract." The court specifically found that defendant "prevented Cedartech from returning to resolve any of her concerns" and that she "refused to pay as agreed because Cedartech did not satisfactorily repair the roof leaks." However, the court continued, "satisfactory leak repair was not a term of the parties' explicit written agreement." The court explained that the parties had entered into a written contract to check for leaks, among other things, and a separate oral contract to repair the leaks for $800. The trial court rejected defendant's argument that there was one contract that was supplemented by an oral agreement to repair two leaks to her satisfaction. The court determined that defendant "did not meet her burden of proof on the theory that the written contract was expanded." The court concluded that the billed sum of $7,045 for Cedartech's services was reasonable and awarded that amount for its claim for breach of contract.
The trial court rejected most of defendant's counterclaim for setoff, which had sought $18,000. The court concluded that a "preponderance of the evidence proved that Cedartech did complete the parties' written contract" and that any water damage that may have occurred from the roof leaks was not directly attributable to Cedartech. The court found that Cedartech attempted to repair the leaks but "was blocked from entry to the house to determine the precise location and nature of the leaks." Even so, the court found that Cedartech failed to fix the leaks *965 and had added charges for shingles used in the attempt. The court also found that Cedartech inadvertently damaged an electrical cord with a nail, but that the timing and extent of any consequential damage related to that accident was too speculative to support a full award of all the costs to repair that defendant claimed. The court awarded defendant a setoff of *256 $800 for the attempted leak repair and $400 for the accidental damage to the electrical wire.[1]
The trial court entered a general judgment awarding Cedartech $7,045 on its breach of contract claim while allowing defendant a setoff in the amount of $1,200. The court also entered a supplemental judgment denying Cedartech an award of attorney fees or recovery of an arbitrator's fee. The court awarded Cedartech other costs in the amount of $518.85.
Defendant appeals from the general judgment, raising four assignments of error. Cedartech cross-appeals from the supplemental judgment, raising three assignments of error. We address each assignment in turn.
II. ISSUES
A. Cedartech's Claim
Defendant's first two assignments of error are directed at Cedartech's contract claim. The assignments are criticisms of the trial court's reasons for its result but are not truly rulings of the trial court of the sort that are required to be identified in an assignment of error. See ORAP 5.45(3) ("Each assignment of error must identify precisely the legal, procedural, factual, or other ruling that is being challenged."); Larisa's Home Care, LLC v. Nichols-Shields , 277 Or. App. 811, 812-13, 372 P.3d 595 (2016), rev'd on other grounds , 362 Or. 115, 404 P.3d 912 (2017) (regarding assignment of error as to a reason rather than a ruling). Because defendant's two assignments are related, we combine and rephrase them. In effect, defendant assigns error to the trial court's ultimate ruling that Cedartech was entitled to prevail on its contract claim because Cedartech had substantially performed the contract. Defendant argues that the trial court was wrong when reasoning that leak repairs were not part of a single, amended contract and were instead a separate and supplemental agreement. Defendant *257 argues, among other things, that, because leak repair was part of an amended contract and the leaks were not successfully repaired, Cedartech did not substantially perform the amended contract and, as a result, defendant was relieved of her obligation to pay.
Resolution of defendant's challenge to Cedartech's claim can be simplified. We need not address the question whether the parties created one or two contracts, because, in either event, one of the trial court's factual determinations is dispositive-its finding that defendant prevented Cedartech from completing repair of the leaks. That is so because inadequate repair of leaks is defendant's central argument against a finding that Cedartech substantially performed the contract. We review the trial court's factual findings for sufficient evidence, including a finding of substantial performance. Fostveit v. Poplin , 255 Or. App. 751, 755, 760, 301 P.3d 915 (2013).
The trial court's finding-that defendant prevented Cedartech from completing the leak repairs-was based on the testimony of several witnesses. Cedartech's operations manager, Stinson, testified that defendant did not allow Cedartech's workers to enter the house. He said that he asked permission to enter the house to check for the leaks but that defendant denied entry. Stinson said that usually he enters the attic or the house to check for leaks from the inside, which is the "easiest way" and the method used about "100 percent" of the time, but that, in this case, defendant did not permit them to enter the house or the attic to check for leaks.
After learning that defendant was not satisfied with Cedartech's work, Stinson testified, he called defendant 15 to 25 times to discuss her concerns. After failing to reach *966 her, he said that he "went out to * * * her house, knocked on the door on numerous occasions. I would say two or three times-not like five or six-two or three times that I went out to her place and left cards on the door step." On cross-examination, Stinson acknowledged that he received an email from defendant stating the roof was still leaking even after Cedartech had worked on it, but he explained that Cedartech could not properly repair the leaks because *258 defendant refused to allow them to enter into the house to examine the leaks.
In a deposition, defendant's husband admitted that Cedartech workers were not permitted to enter the house. At trial, he claimed that his deposition testimony was inaccurate.
Other witnesses testified that entrance into the structure is generally necessary in order to properly repair roof leaks. David Whitehead, the owner of Cedartech, said that, although it is theoretically "possible" to repair leaks without entering the structure, he has never done it in his career. Charles Remington, one of Cedartech's roof experts, testified that usually you can only spot a leak on a roof by not going in the house if it is "a gaping hole or a shingle missing or something like that." He said that Cedartech's repair method was the "proper way." And David Ross, another roof expert for Cedartech, agreed with Remington that, to find a leak on a roof, "you start on the inside of the house" before checking the outside of the roof.
In sum, the record provides sufficient evidence to support the trial court's finding that defendant prevented Cedartech from successfully completing the repair of the leaks. Thus, even if leak repair is part of one single contract, Cedartech's inability to successfully complete that aspect of the work is attributable to defendant, who would not allow Cedartech access into the home. See Anderson v. Allison , 256 Or. 116, 121, 471 P.2d 772 (1970) (where conduct of defendant has prevented performance of a contract provision by plaintiff, defendant cannot avail himself of any such failure to perform).
Beyond that fact, the remaining question of substantial performance was a matter of disputed facts for the trial court to resolve. Whether there has been substantial performance is a question of fact. See American Petrofina v. D & L Oil Supply , 283 Or. 183, 195, 583 P.2d 521 (1978) (reciting rule); Fostveit , 255 Or. App. at 755, 301 P.3d 915 (same); Markwart v. Fry , 60 Or. App. 431, 437, 653 P.2d 1307 (1982) (same). The trial court concluded that a "preponderance of the evidence proved that Cedartech completed the material terms of the parties' written contract." From our review of the record, we *259 conclude that there was sufficient evidence-that Cedartech cleaned the roofs, cleaned the gutters, cleaned the skylights, applied Cedarsilver treatment to the roofs, and performed other work-to support the trial court's ultimate conclusion of substantial performance of the promised maintenance services. See Fostveit , 255 Or. App. at 759-60, 301 P.3d 915 (after bench trial, sufficient evidence supporting determination of substantial performance); Markwart , 60 Or. App. at 437, 653 P.2d 1307 (construction contract claim for unpaid balance due despite deficiencies alleged in defense).
B. Defendant's Offset
In her third assignment of error, defendant asserts that the trial court erred in allowing only $1,200 in an offset against Cedartech's recovery. In an affirmative defense, treated as a counterclaim, defendant had alleged a right to offset the costs of a later roof contractor, repair of water damage from leaks in the home, and repair of an electrical wire damaged during Cedartech's work.
To the extent that the third assignment decries the failure of the trial court to award a larger offset for a number of reasons, defendant fails to address her failure to provide particularized proof of her offset claim. Declining to offset more than $1,200, the trial court concluded that it was "unclear which portion of the total [$18,000] offset requested applies to each component listed."
As noted, the court did award defendant an $800 setoff for the added cost of the two bundles of shingles used in leak repairs, because Cedartech did not fully repair the leaks. The court also awarded a partial setoff *967 of $400 for the damage to the electrical wire.[2] In all, we find no basis upon which to conclude that the evidence compelled the trial court, as a matter of law, to award a larger offset.
C. Video Evidence
In her fourth assignment of error, defendant contends that the court abused its discretion by failing to admit a video recording prepared by defendant's expert to assist the expert's testimony. Defendant claims that the exclusion *260 of the video was prejudicial. Cedartech responds that, among other things, defendant failed to make an offer of proof. With that, we agree.
At the outset of trial, the parties discussed with the court the exhibits that would be offered and whether either party would object to particular exhibits. Cedartech's attorney, who is blind, explained to the court that, as an accommodation, he and defendant's counsel had agreed to exchange any photo and video exhibits prior to trial so that Cedartech's attorney could have them reviewed. Due to problems with video format and delivery, Cedartech's attorney did not receive the video until the day before trial. He told the court that he did not have sufficient time to review it and that he did not know its contents. He asked that the court exclude the video exhibits.
In response, defendant's counsel explained to the court that the videos were prepared by one of his experts, and that, upon learning the videos would not play, he had them reformatted and hand delivered to Cedartech's attorney's office. The court excluded the video exhibits. The court and parties then discussed unrelated preliminary trial matters. The court asked for opening statements. At that moment, defendant's counsel said that he wanted to add one thing to the record:
"It relates to the exclusion of those exhibits. I just wanted to put in the record that the three videos being excluded, one is three minutes and 49 seconds long, the other one is three minutes and 12 seconds long, and the longest one is 15 minutes and 45 seconds. * * * And I would urge you to reconsider."
The court declined, and the issue was not discussed again. The transcript of the proceeding does not indicate that defendant's counsel actually offered the videos as exhibits, tendered the videos themselves as an offer of proof, or sought to describe the contents of the video as an offer of proof.
Assuming without deciding that the court abused its discretion in excluding the videos, such error is reversible only if it is prejudicial. See OEC 103(1) (evidentiary error is not presumed to be prejudicial); State v. Hudson , 279 Or. App. 543, 554-55, 380 P.3d 1025 (2016) (party challenging an *261 evidentiary ruling must demonstrate that it was prejudiced by the ruling). Ordinarily, when the trial court has excluded evidence, the proponent of the disputed evidence must make an offer of proof. State v. Affeld , 307 Or. 125, 128, 764 P.2d 220 (1988). We recently explained:
"The offer of proof serves several purposes. It permits the trial court to reconsider its ruling in view of the actual evidence to be offered. State v. Smith , 319 Or. 37, 44, 872 P.2d 966 (1994). The offer of proof permits the appellate courts to decide whether error occurred. And, ultimately, the offer permits the appellate courts to determine whether an error was likely to have affected the result of the case so as to constitute prejudicial error. Id . ; see State v. Morgan , 251 Or. App. 99, 105, 284 P.3d 496 (2012) (an offer of proof shows whether an error 'was likely to have affected the result of the case' (internal quotation marks omitted))."
State v. Krieger , 291 Or. App. 450, 455, 422 P.3d 300 (2018).
The offer of proof requirement is not difficult to satisfy. The offer may be formal or informal. It may occur outside the presence of the jury through an examination of the witness on the stand or it may occur in narrative form through a description by counsel of the intended evidence. Id. at 456, 422 P.3d 300. "Whether in testimony, in a narrative summary, or, at the least, in descriptive *968 argument, an offer of proof remains essential in order to permit an appellate court to determine whether there is reversible error." Id .
On this record, we cannot determine whether the excluded evidence was prejudicial because defendant failed to make an offer of proof. The limited colloquy recounted above was the full extent of the discussion about the videos. Defendant made no formal or informal offer of proof and did not elaborate to propound the relevance of the video. Defendant merely said that the videos were made by an expert, that he acted in good faith to get the videos to Cedartech's counsel upon receipt, and that the three videos were together about 20 minutes long.
Nonetheless, defendant contends that there "was no need for an 'offer of proof' because the video, itself, effects an offer." However, insofar as our record reflects, the videos themselves were never actually made part of the record.
*262 Neither the transcript nor the court's exhibit list reflects that the video was offered (and rejected) as an exhibit or was tendered and retained by the court as an offer of proof.[3] Absent an offer of proof, defendant has not provided this court with information in the record from which we can determine whether an error-if any-was prejudicial. See Krieger , 291 Or. App. at 457, 422 P.3d 300 (regarding importance of offer of proof); see also Affeld , 307 Or. at 128, 764 P.2d 220 (same).
D. Attorney Fees
Cedartech cross-appeals from the supplemental judgment in which the court denied it an award of attorney fees and denied recovery of an arbitrator's fee. As to the denial of attorney fees, Cedartech asserts two assignments of error, arguing, among other things, that the trial court lacked discretion to deny attorney fees, given the contract provision that the prevailing party shall be awarded attorney fees. Defendant responds that Cedartech failed to preserve any error by failing to argue that attorney fees were mandatory.
Some procedural history explains part of the trial court's rulings on attorney fees and the arbitrator's fee. The case was delayed by Cedartech's incorrect information on the face of the original complaint, which indicated that the case was not subject to mandatory arbitration. Months after Cedartech filed an amended complaint, the case was referred to arbitration. An unsuccessful settlement conference followed. The trial court issued an order that directed that arbitration be completed no later than July 28, 2016. Nonetheless, the arbitration hearing was rescheduled to August 8 due to the unavailability of Cedartech's attorney. At the hearing, the arbitrator found Cedartech's witnesses *263 credible and determined that defendant was liable on the contract. The arbitrator awaited filing an award with the court until after submission of a fee petition and objections by the parties. On its own motion, the trial court issued an order that removed the case from arbitration. Defendant learned from court staff that it was unnecessary to file for trial de novo . Trial was reset to November, at which Cedartech prevailed on its breach of contract claim.
The trial court responded to Cedartech's petition for attorney fees in a letter ruling. After recounting the procedural history, the court reviewed the factors provided in ORS 20.075(1) for determining whether to award attorney fees. The court found that the "case was a garden variety contract dispute," in which the parties did not act in bad faith. ORS 20.075(1)(a) (conduct of the parties). The court found that the claims and defenses were objectively reasonable. ORS 20.075(1)(b). The court also determined that *969 a fee award would not deter good faith claims or defenses, nor deter meritless claims or defenses, and would be unaffected by any prevailing party fee. ORS 20.075(1)(c), (d), (g) (corresponding factors). The court observed that Cedartech "propelled the arbitration past the immutable extended deadline set by a court Order," a factor that weighed against an award of fees to Cedartech. ORS 20.075(1)(e) (objective reasonableness of parties in proceeding). Finally, the court found that neither party seriously considered the weakness of its own position and neither party reasonably pursued settlement. ORS 20.075(1)(f) (pursuit of settlement). Determining that no factor supported awarding attorney fees, the trial court denied Cedartech recovery of any attorney fees. The court adhered to that conclusion in response to Cedartech's motion to reconsider.[4] *264 We reject defendant's arguments that Cedartech failed to assert, as a matter of right, its contractual entitlement to attorney fees or that Cedartech invited the court's error by discussing the factors provided in ORS 20.075(1). To determine whether a party's argument is properly preserved for appellate review, "we view the record in light of the purposes of fairness and efficiency that underlie the preservation requirement." Northwest Natural Gas Co. v. Chase Gardens, Inc. , 328 Or. 487, 499-500, 982 P.2d 1117 (1999). Further,
"a party ordinarily need not reiterate orally the arguments that it has made in writing, and also need not renew those arguments after the court has made its ruling. * * * Rather, the question is whether a party provides sufficient information to enable opposing parties to meet an objection and the trial court to avoid error."
Maxfield v. Nooth , 278 Or. App. 684, 687, 377 P.3d 650 (2016) (citations and internal quotation marks omitted).
Cedartech initially raised the relevant legal issue in its complaint. That is, Cedartech alleged that it was entitled to fees, as a matter of right, based on the parties' contract. Paragraph 9 of the amended complaint alleged the text of the contract with its mandatory fee language:
"The Contract with Defendant provides in part: 'In case suit or action is brought upon this contract, the prevailing party shall be entitled to recover its reasonable attorneys fees at trial and on any appeal. Customer shall reimburse to contract[or] its collection expenses and attorneys fees even if no suit or action is brought. Contractor is also entitled to recover post-judgment collection expenses.' "
(Emphasis added.) Plaintiff then alleged that "Plaintiff is entitled to reasonable attorney fees pursuant to ORS 20.096 and ORCP 68." (Emphasis added.) In her answer, defendant admitted terms of the contract and that the contract provides for the recovery of attorney fees to the prevailing party. She also alleged that, under the contract, "defendant is entitled to her reasonable cost and attorney fees if she prevails in this matter." (Emphases added.)
*265 Cedartech asserted the issue again in its petition for attorney fees after trial. In the petition's first paragraph, Cedartech stated:
"Plaintiff Cedartech, Inc. is entitled to recovery of its attorney fees pursuant to ORS 20.096 and ORCP 68 because the claim made by Plaintiff was based on a contract that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract are recoverable ."
(Emphases added.) By expressly pleading in its complaint that attorney fees "shall be" awarded and by petitioning for fees as an entitlement of contract, Cedartech relied on *970 the contract and made the contract provision the basis for its entitlement. In her answer and at hearing, defendant did not dispute that recovery of attorney fees was a matter of contractual entitlement. In short, Cedartech asserted its contractual entitlement to fees and provided "sufficient information to enable opposing parties to meet an objection and the trial court to avoid error." Maxfield , 278 Or. App. at 687, 377 P.3d 650.
In the post-trial proceedings under ORCP 68, the parties appear to have engaged in a debate about determining the amount of fees that should be recoverable. After noting its contractual entitlement to fees, Cedartech's petition for fees reviewed the factors in ORS 20.075(1) and (2), in light of the facts of the case, in order to address the "amount" of reasonable attorney fees to be awarded. The statute requires as much. In addition to setting out factors concerning the amount of fees, ORS 20.075(2) requires that the "court shall consider the factors specified in [ ORS 20.075(1) ] in determining the amount of an award of attorney fees." We are unpersuaded by defendant's argument that Cedartech invited error by "arguing the ORS 20.075(1) factors."
To decide Cedartech's assignment of error, we review the trial court's determination regarding entitlement to attorney fees for errors of law, and, if attorney fees are authorized or required, we review the trial court's award for an abuse of discretion. Barber v. Green , 248 Or. App. 404, 410, 273 P.3d 294 (2012) ; see ORS 20.075(3) (amount or denial reviewed for abuse of discretion). Because the parties' contract provided that a prevailing party "shall be" entitled to *266 recover attorney fees, the trial court lacked discretion to deny attorney fees entirely. See Barber , 248 Or. App. at 413, 273 P.3d 294 ("When attorney fees to the prevailing party are mandatory, * * * the circuit court must consider the factors set out in ORS 20.075 in determining the amount of the fees, but it does not have the discretion to award no fees at all."); Lemargie v. Johnson , 212 Or. App. 451, 455, 157 P.3d 1284 (2007) (denial of fees is abuse of discretion if attorney fees are mandated by statute); Allen & Gibbons Logging v. Ball , 91 Or. App. 624, 631-32, 756 P.2d 669 (1988) (error to deny fees to prevailing party where contract provided prevailing party shall be entitled to reasonable attorney fees). As to the substance of Cedartech's assignment, defendant does not contend otherwise. Accordingly, the court erred in making no fee award to Cedartech.
E. Arbitrator's Fee
In its cross-appeal, Cedartech also assigns error to the trial court's denial of its request to recover in costs $500 paid as the arbitrator's fee. Cedartech argues that "the denial of [the] arbitrator's fee was in effect a sanction for disobeying a court order." Cedartech relies on Pamplin v. Victoria , 319 Or. 429, 436-37, 877 P.2d 1196 (1994), for the proposition that a "sanction is appropriate only when it is just and only where there is willfulness, bad faith, or other fault of like magnitude." That case, however, is inapt. Pamplin pertains to discovery sanctions under ORCP 46 B(2)(c). This case does not involve a sanction for discovery under ORCP 46 B(2)(c).
The trial court's denial of an item of costs is a matter within the trial court's discretion. In pertinent part, ORCP 68 B provides:
"In any action, costs and disbursements shall be allowed to the prevailing party unless these rules or any other rule or statute direct that in the particular case costs and disbursements shall not be allowed to the prevailing party or shall be allowed to some other party, or unless the court otherwise directs."
We have previously held that the court has discretion to determine the amount of costs or decline to award costs altogether:
*267 " 'By giving a trial court authority to "otherwise direct[ ]," ORCP 68 B empowers the court with discretion not to award costs and disbursements to a prevailing party. Thus, we review the trial court's decision not to award costs and disbursements for abuse of discretion.' "
Johnson and Johnson , 276 Or. App. 408, 415, 367 P.3d 952 (2016) (quoting *971 AutoLend, IAP, Inc. v. Auto Depot, Inc. , 170 Or. App. 135, 143, 11 P.3d 693 (2000), rev. den. , 332 Or. 240, 28 P.3d 1175 (2001) ). Thus, the "the trial court has discretion to decline to award" costs to a prevailing party. Johnson , 276 Or. App. at 416, 367 P.3d 952. Other than the sanction argument, Cedartech does not show how the trial court abused its discretion in denying recovery of the arbitrator's fee as a matter of costs. Therefore, we reject its contention that the trial court erred in its award of costs.
III. CONCLUSION
In the end, we affirm the general judgment. As to the supplemental judgment, we reverse and remand as to attorney fees and affirm as to costs.
On appeal, general judgment affirmed. On cross-appeal, supplemental judgment reversed and remanded as to attorney fees; otherwise affirmed.

The court concluded that the evidence did not prove by a preponderance that Cedartech employees knew or should have known that the electrical wiring in defendant's home was abnormally close to the underside of the roof, within striking distance of roofing nails. The court dismissed defendant's negligence counterclaim.

Defendant paid an electrician $230 to repair the wire.

As the case was being appealed, defendant's counsel brought a thumb drive, described to contain the several video segments, to the circuit court in an envelope, as can be the practice when returning court exhibits to the trial court for forwarding to this court on appeal. The thumb drive or videos do not appear on the court's exhibit list, by which defense counsel's representative acknowledged receipt of exhibits, in conjunction with the customary return of exhibits to trial counsel at the conclusion of trial. Although we have no reason to doubt that the video on the thumb drive is the same as that once held by the defense expert or by defense counsel at trial, nothing in the record confirms that the thumb drive is in the record such that we could consider its contents for purposes of this appeal.

At the hearing on fees, defendant argued that the $80,829.50 amount that Cedartech sought was excessive and that no portion of fees should be awarded for attorney fees incurred in arbitration. On the witness stand, defendant's counsel testified that a reasonable fee for the prevailing party would be between $25,000 to $35,000. In closing, defendant's co-counsel went further, arguing that, based on misrepresentations in the fee petition, the court should "just deny the fees in total, and that's the appropriate sanction." Cedartech sought reconsideration arguing that denial of fees seemed to be an unjustified sanction, perhaps related to the delay in completing arbitration by the court's deadline. The court denied reconsideration, explaining that, because "no statutory factors support an award of attorney fees, it is not reasonable to award them."